NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

15-P-227                                           Appeals Court


COMMONWEALTH  vs.  CARROLL N. HEATH.[1]


No. 15-P-227.

Essex.      February 11, 2016. - April 26, 2016.

Present:  Kafker, C.J., Rubin, & Agnes, JJ.


Practice, Criminal, Loss of evidence by prosecution,
     Preservation of evidence, New trial.  Evidence,
     Exculpatory, Videotape, Relevancy and materiality.



     Complaint received and sworn to in the Newburyport Division
of the District Court Department on May 30, 2013.

     The case was tried before Allen G. Swan, J., and a motion
for a new trial was heard by him.


     Christine DeBernardis for the defendant.
     Catherine P. Sullivan, Assistant District Attorney, for the
Commonwealth.


     KAFKER, C.J.  The defendant, Carroll N. Heath, was

convicted of assault and battery on a police officer pursuant to

_____

     [1] The defendant uses the name Carroll Heath-Willis in his
pleadings, but as is our custom, we take the defendant's name as
it appears on the complaint.  See Commonwealth v. Supplee, 45
Mass. App. Ct. 265, 265 n.1 (1998).

G. L. c. 265, § 13D, and also of disturbing the peace.[2]  He

appeals the judge's denial of his motion for a new trial on the

assault and battery charge, claiming that he was denied due

process of law by the Commonwealth's failure to preserve a video

recording of incidents in the booking room of the Haverhill

police station that led to the assault and battery charge.[3]  We

reverse.

1.  Background.  a.  The events of May 29.  On May 29,

2013, the defendant was arrested for disturbing the peace.  He

had entered the emergency room at Merrimac Valley Hospital in

Haverhill, demanded a sandwich, a shower, and that someone do

his laundry, and let loose a tirade of racist, sexist, and other

offensive comments at medical personnel when they told him that

he must first see a physician before they could provide him with

food and that they "did not have a shower in the emergency

department."  Haverhill police Officer Dennis Moriarty, who was

called to the hospital, tried to calm the defendant and escorted

---

[2] The defendant's conviction of disturbing the peace was placed on file with the defendant's consent and is not before us.  See Commonwealth v. Lites, 67 Mass. 815, 816 (2006).  The defendant was also charged with threatening to commit a crime, but he was found not guilty on that charge.

[3] The defendant has been represented by at least three different attorneys over the course of these proceedings.  We refer to them as pretrial counsel (who filed the motions to produce and preserve the booking video), trial counsel, and appellate counsel (who represented the defendant in connection with his motion for a new trial and on appeal before this court).

him from the hospital building while the defendant verbally threatened to hack him to pieces with a machete.  The defendant then proceeded to a neighboring property, and Moriarty was called to that location by a resident when the defendant refused to leave.  Moriarty then arrested the defendant and took him to the police station for booking.

Officer Moriarty testified at trial that because the defendant "needs crutches to walk . . . [and] has no use of his legs," Moriarty did not place the defendant in handcuffs at the time of the arrest.  Moriarty testified that he asked the defendant during booking to remove various articles from his person, including a baseball cap, socks, and shoes, and Moriarty informed the defendant that if he did not remove the items voluntarily, Moriarty would do it himself.  Moriarty testified that when the defendant refused to remove the aforementioned articles, Moriarty removed the defendant's cap.  The defendant then forcefully struck Moriarty in the chest.  Moriarty testified that he was wearing a "bullet resistant trauma vest[]" at the time, and the punch left "no marks" and "didn't require any type of medical attention."  Moriarty testified that he and two other officers subdued the defendant and "dragged him into his cell."

During Officer Moriarty's testimony, he was asked about video recording in the booking room.  On direct examination, he

testified that there was a "means of recording" what was going on in the booking room and that he did not know "who [was] . . . in charge of maintaining" that recording device.  He also testified that he was not permitted to view the video recording nor did he have access to it.  On cross-examination, Moriarty testified that "there were security cameras there that essentially captured the entire booking process."  He also testified on cross-examination that he did not "attempt to talk to any other officers, superiors or other supervisors . . . to obtain that booking video."

During the charge conference, the defendant requested an instruction on missing evidence, i.e., the booking video, which, he informed the judge, had been requested and had been the subject of a motion to preserve.  It was clear at this time that the judge, the prosecutor, and trial counsel understood that the video had not been preserved.[4]  The defendant proposed that the judge instruct the as follows:

---

[4] Although the details of the discussion regarding the jury instruction are marked as inaudible, the issue is not in doubt. Trial counsel argued in his opening statement that "the Haverhill [p]olice actually have the ability to videotape this process.  They actually get this on to get the actual booking where this alleged incident occurred.  You're not going to see a videotape, ladies and gentlemen of the jury."  The motion to preserve the booking video, filed by pretrial counsel, had been allowed on June 27, 2013, without opposition from the Commonwealth.  The prosecutor had raised the issue of the missing evidence instruction to the judge before jury

"[I]f the Commonwealth, . . . could have gathered and produced particular evidence that would have been helpful to your deliberations in this matter, it is logical to assume that the government would naturally offer that evidence at trial.

"If then, without explanation, . . . that evidence is not presented at trial, you may infer that the potential . . . evidence would have been unfavorable to the Commonwealth."

The judge denied the request and the defendant objected.

In closing, trial counsel conceded the disturbing the peace charge but contested the assault and battery, arguing:

"[Y]ou heard that the whole booking process is recorded. There's video cameras that record this. Officer Moriarty knows that these booking videos can be used as evidence. . . . But there's no booking video. We only know what happened from Officer Moriarty's testimony. We don't have a booking video to either corroborate his story or dispel it. But don't you find it a little problematic if the Commonwealth is trying to get a conviction and they have a booking video that backs his story up? You should be watching it right now. You should have already watched it. But you don't have it here today."

The prosecutor ended his closing by addressing the booking video:

"I'd simply ask you not [to] speculate as the Judge will instruct you about what was in the video or why

_____

empanelment. On July 21, 2014, at an evidentiary hearing on the defendant's motion for a new trial, the prosecutor told the judge that on the date the defendant's motions to produce and preserve the booking video had been allowed, "[she] did sign the conference report with [defendant's pretrial counsel], and [she] did agree that the booking video would be provided." The motion judge, who was also the trial judge, explained that he had given trial counsel "full leeway without any objection from the District Attorney to argue to the jury the absence of a video in the booking room." The issue for the judge was not whether the video had been made and not preserved but who was responsible for its deletion.

there's no video or anything like that. And simply confine yourself to the evidence before you. And the evidence before you is the officer told you he didn't know how to get the video. . . . Beyond that, there's no evidence before you."

b. New trial motion. The defendant filed a motion for new trial, contending that he was denied due process of law by the Commonwealth's failure to preserve the booking video. The motion was supported by affidavits from the defendant and his pretrial counsel. The motion judge (who was also the trial judge) conducted an evidentiary hearing. The judge found that

"A pretrial hearing was held on June 3, [2013,] and another on June 27. At the second pretrial, the defendant's court-appointed attorney filed a discovery motion requesting that the police booking video be preserved. The court allowed the motion, and defense counsel agreed in open court to contact the police department directly to obtain the video.

"While apparently voicemail messages were left by counsel for Haverhill Police Sergeant Brian Smith[,] . . . Smith did not receive them, due in part . . . to problems in the department's telephone system . . . ."

The judge credited Sergeant Smith's testimony at the evidentiary hearing to the effect that he did not speak to pretrial counsel about the video until he saw him at Haverhill District Court on an unrelated matter in mid-July, 2013. When Smith checked on the booking video, he discovered that it had been erased. Smith testified that he had never received a copy of the motion to preserve the video. The judge found:

"Even assuming the video to be potentially exculpatory -- something now we will never know -- and material, there is no culpability on the part of the Commonwealth. The

request to preserve the video was not made until 29 days after the recording of the assault in the booking room was made.[5]  Given that the video system's self-purging mechanism operates 30 days or sooner after recording, the request when made may have already been untimely. Moreover, since counsel had assumed the responsibility of obtaining the video and, by his own calculation, did not make contact with the officer responsible for evidence preservation until 33 days by telephone (July 1) and 43 days in person (July 11) after the recording was made (May 29), the Commonwealth cannot be charged with negligent or intentional culpability in the destruction of the video."

The judge ultimately found that "any prejudice to the defendant was obviated by allowing defense counsel 'to question about and comment upon the Commonwealth's failure to produce the videotape.'  Commonwealth v. Cameron, 25 Mass. App. Ct. 538, 549 (1988)."

2.  Denial of the motion for new trial.  a.  Standard of review.  "It is well established that, '[i]n reviewing the denial or grant of a new trial motion, we examine the motion judge's conclusion only to determine whether there has been a

_____

[5] The judge appears to refer to the filing of the motion to preserve, which he referred to as "the request to preserve." During the hearing, appellate counsel challenged the judge's calculation that thirty days had elapsed between the recording of the booking video and the date on which pretrial counsel had left his first voice mail message for Sergeant Smith, claiming that the judge's calculation was off by one day.  The Commonwealth concedes that the defendant's calculation was probably correct.  Because Officer Moriarty was not first dispatched until about 10:00 P.M. on May 29, 2013, if pretrial counsel left his first voice mail message for Sergeant Smith before that time on June 28, less than thirty full days would have elapsed between that voice mail message and the booking room incident.  Regardless of who is correct, our decision in this case does not rely on that distinction.

significant error of law or other abuse of discretion.'" Commonwealth v. Brescia, 471 Mass. 381, 387 (2015), quoting from Commonwealth v. Wright, 469 Mass. 447, 461 (2014). We typically "grant special deference to a decision on a motion for a new trial of the judge who was also the trial judge." Commonwealth v. Tucceri, 412 Mass. 401, 412 (1992). Nevertheless, because the defendant's "new trial claim is constitutionally based, this court will exercise its own judgment on the ultimate factual as well as legal conclusions." Id. at 409. Commonwealth v. Cohen (No. 1), 456 Mass. 94, 105 (2010).

b. Test to determine remedy for the loss of the video. In Commonwealth v. Williams, 455 Mass. 706, 716-717 (2010), quoting from Commonwealth v. Cintron, 438 Mass. 779, 784 (2003), the Supreme Judicial Court stated:

> "A defendant who seeks relief from the loss or destruction of potentially exculpatory evidence has the initial burden, . . . to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination, that access to the [lost or destroyed evidence] would have produced evidence favorable to his cause. . . . If he meets his initial burden, a balancing test is employed to determine the appropriateness and extent of remedial action. The courts must weigh the culpability of the Commonwealth, the materiality of the evidence, and the potential prejudice to the defendant."[6]

---

[6] In some circumstances, a defendant is not required to meet the initial burden: "[W]here the Commonwealth has acted in bad faith or recklessly, resulting in the loss or destruction of evidence, the defendant may be independently entitled to a remedy even without meeting [this initial burden]." Williams,

We apply this analysis to the case before us.

    i.  Defendant's initial burden.  Although the judge assumed that the video would have been potentially exculpatory to move on to the balancing test, we conduct our own analysis of whether the defendant met his initial burden as a matter of law. The defendant's initial burden to establish by means of "concrete evidence" that the destroyed evidence was exculpatory does not require definitive proof of what the video did, in fact, show; "because the [video has] been destroyed, it is no longer possible to determine whether the defendant would have obtained any evidence of an exculpatory nature had the [video] been made available to him for inspection or examination." Commonwealth v. Neal, 392 Mass. 1, 12 (1984).  The Supreme Judicial Court reiterated this point in Williams, supra at 714-715, quoting from Neal, supra:

> "To require the defendant at this stage to prove that the [lost or destroyed evidence at issue] [was] in fact exculpatory would . . . convert the [Commonwealth's duty to disclose exculpatory evidence] . . . into an empty promise, easily circumvented by suppression of evidence by means of destruction rather than mere failure to reveal" (quotations omitted).

---

455 Mass. at 718.  In the instant case, while the judge did not specifically reach the issue of bad faith in his order denying the defendant's motion for a new trial, his findings do not support the view that the Commonwealth exhibited bad faith in failing to prevent the deletion of the booking video.

The "reasonable possibility, based on concrete evidence" formulation does, however, require more from a defendant than "speculation or surmise" about whether he might have uncovered something unknown to him having exculpatory value if he had had an opportunity to examine the evidence before its destruction. Williams, 455 Mass. at 717. The defendant must articulate what exculpatory information he believes the evidence would have revealed, and there must be a "reasonable possibility" that the evidence could have revealed such exculpatory information prior to its loss or destruction. Compare Commonwealth v. Woodward, 427 Mass. 659, 677-678 & n.33 (1998) (defendant established "reasonable possibility" that exculpatory evidence would have been found when Commonwealth lost tissue sample, "the bullseye of the medical problem," which was important issue at trial), and Commonwealth v. Sasville, 35 Mass. App. Ct. 15, 15, 22-23 (1993) (defendant established that Commonwealth destroyed "potentially exculpatory evidence" in rape case), with Williams, 455 Mass. at 720 ("defendant was unable to demonstrate a reasonable possibility that the lost opportunity to observe the testing [of a blood sample] was exculpatory"), and Commonwealth v. Meas, 467 Mass. 434, 448 n.16, cert. denied, 135 S. Ct. 150 (2014) ("defense counsel offered only speculation in claiming that the lost [video] footage would have been exculpatory" where two of three video recordings preserved).

In the instant case, the defendant's affidavit contends specifically that the booking video would have shown that he did not assault Officer Moriarty and that Moriarty, in fact, assaulted him.  See Commonwealth v. Carey, 26 Mass. App. Ct. 339, 340 (1988) ("Appropriate use of videotapes as evidence includes the videotape record of the booking of a defendant").  Moriarty, the Commonwealth's only trial witness concerning the incidents at booking, testified that, "there were security cameras there that essentially captured the entire booking process."  The credibility of Moriarty was critical, and if the booking video had shown that the defendant had not assaulted Moriarty, it likely would have been outcome determinative on the assault and battery charge.  See Neal, supra at 11, quoting from Commonwealth v. Collins, 386 Mass. 1, 8 (1982) ("[E]vidence tending to impeach the credibility of a key prosecution witness is 'clearly exculpatory'").[7]  "Any conclusion on this record that the videotape has no exculpatory potential could rest only on an arbitrary preference for the officer['s] testimony over [the affidavit] of the defendant."  Commonwealth v. Cameron, 25 Mass. App. Ct. 538, 547 (1988).  The defendant has therefore "establish[ed] a reasonable possibility" that the booking video would have been exculpatory.  Williams, 455 Mass. at 716,

---

[7] Of course, the booking video also could have established definitive evidence of the defendant's guilt as well.

quoting from Cintron, 438 Mass. at 784. The judge thus did not err in assuming that the video was exculpatory.

ii. The balancing test. We next consider the judge's application of the balancing test that "weigh[s] the culpability of the Commonwealth, the materiality of the evidence, and the potential prejudice to the defendant." Williams, supra, quoting from Cintron, supra. We conclude that the judge erroneously determined that the Commonwealth had no culpability because he misapprehended when the Commonwealth's duty to preserve the evidence attached. We also conclude that he erroneously determined that there was no prejudice to the defendant, as the combination of the Commonwealth's failure to preserve and produce the booking video, the judge's declining to give the jury any instruction on how to consider the evidence, and the prosecutor's argument to the jury that they should not speculate why there was no video did in fact prejudice the defendant. "As a result, the judge did not properly calibrate the factors in the balancing test and underestimated both the culpability of the Commonwealth and the potential prejudicial effect of the destruction of the evidence," as well as the appropriate remedy. See Sasville, 35 Mass. App. Ct. at 23.

A. Culpability. The judge's finding that "there [was] no culpability on the part of the Commonwealth" necessarily presupposed that the Commonwealth's duty to preserve exculpatory

evidence attaches only when a motion to preserve the evidence has first been made. Such a conclusion is legal error. As the defendant and the Commonwealth both recognized at oral argument, in Sasville, 35 Mass. App. Ct. at 18-19, this court confirmed that the duty to preserve material, potentially exculpatory evidence arises prior to such a motion.

> "It has been held that the Commonwealth has the duty not to destroy exculpatory evidence; rather, it must preserve such evidence for the defendant to inspect, examine, or perform tests on, if he so chooses. This obligation grows out of the Commonwealth's duty to disclose evidence favorable to an accused upon request . . . where the evidence is material either to guilt or to punishment . . . . To hold otherwise would allow the Commonwealth's duty to disclose exculpatory evidence to be avoided by destroying vital evidence before prosecution begins or before defendants hear of its existence."

Ibid. (quotations and citations omitted). In Commonwealth v. Laguer, 448 Mass. 585, 595 n.27 (2007), the Supreme Judicial Court cautioned that "the Commonwealth's duty to disclose exculpatory evidence is not dependent on a request by the defense for such evidence. The Commonwealth has a duty to disclose all exculpatory evidence, requested or not."

We therefore conclude that in the instant case, where the police department had a video recording of an alleged crime committed in its booking area, with which the defendant was charged, the Commonwealth should have required no further notification by the defendant to recognize the need to preserve

that video evidence.[8]  See Sasville, supra at 23-24 ("The worth of such [evidence] to establish conclusively [the guilt or innocence of the defendant] would be known to any professional in the criminal justice system").  Contrast Commonwealth v. Jewett, 17 Mass. App. Ct. 354, 359-360, S.C., 392 Mass. 558 (1984) (defendant must make request for specialized handling of evidence where Commonwealth would not otherwise be aware of need for such handling); Commonwealth v. Mitchell, 38 Mass. App. Ct. 184, 192-193 (1995) (same).

We conclude that the Commonwealth's breach of its duty to preserve that evidence was negligent.[9]  See Cameron, 25 Mass. App. Ct. at 548.  "Negligence or inadvertence are less culpable than bad faith, but they are nevertheless culpable and must be accounted for in the balancing procedure."[10]  Commonwealth v.

_____

[8] The actions of the police in allowing the booking video to be deleted  are imputed to the prosecutor.  See Commonwealth v. Olszewski, 401 Mass. 749, 753 (1988), S.C., 416 Mass. 707 (1993), cert. denied, 513 U.S. 835 (1994).  This is true even if the prosecutor did not have actual knowledge of the existence of the booking video.  See Commonwealth v. St. Germain, 381 Mass. 256, 261 n.8 (1980); Commonwealth v. Gallarelli, 399 Mass. 17, 20 n.4 (1987).

[9] While we independently arrive at this conclusion, the Commonwealth correctly conceded at oral argument before this court that there was at least negligent culpability on the Commonwealth's part for failing to preserve the booking video.

[10] The judge's findings regarding the lengthy delay in the defendant's request for the booking video, and the judge's crediting of Sergeant Smith's testimony at the motion hearing that he did not receive the voice mail messages prior to the

Noonan, 48 Mass. App. Ct. 356, 360 n.5 (1999), quoting from Commonwealth v. Olszewski, 401 Mass. 749, 757 n.7 (1988), S.C., 416 Mass. 707 (1993), cert. denied, 513 U.S. 835 (1994). In finding the Commonwealth not culpable, the judge erroneously failed to consider and then weigh the Commonwealth's negligence in the balancing test.

B. Materiality of the booking video. The trial judge did not reach the issue of materiality, but assumed that the booking video was material for the sake of conducting the balancing test. We now consider the issue ourselves.

We must first determine the appropriate standard to apply to review the materiality of the booking video. "The definition of 'material' varies with the specificity of the defendant's discovery request." Commonwealth v. Montanez, 410 Mass. 290, 297 n.8 (1991). Prior to trial, the defendant's motions to preserve and produce the booking video were allowed without opposition from the Commonwealth. These motions represented "specific request[s which] 'provide[d] the Commonwealth with notice of the defendant['s] interest in a particular piece of evidence.'" Commonwealth v. Jackson, 388 Mass. 98, 110 (1983), quoting from Commonwealth v. Wilson, 381 Mass. 90, 109 (1980). As such, to establish the materiality of the evidence, the

_____

thirty-day scheduled erasure of the video, support a finding of negligence rather than bad faith.

"defendant need only demonstrate that a substantial basis exists for claiming prejudice from the nondisclosure."  Williams, 455 Mass. at 721 n.12, quoting from Tucceri, 412 Mass. at 412.

As was the case in Sasville, 35 Mass. App. Ct. at 25-26, the credibility of "the key prosecution witness . . . was of major importance."  If the booking video had demonstrated that the defendant had not assaulted Officer Moriarty,

> "such evidence would have undoubtedly undermined [Moriarty's] credibility in the eyes of the jury.  It would also have provided a theory of defense to the defendant, [that the police had attempted to cover up an assault by Moriarty against the defendant, as alleged in the defendant's affidavit]. . . .  Therefore, the destroyed evidence was highly material."

Ibid.

The defendant has demonstrated that destruction of the booking video prior to its disclosure to him created a substantial basis for a claim of prejudice.  Williams, supra. This factor of the balancing test thus favors the defendant, and the judge did not err in assuming that the video was material.

C.  Prejudice to the defendant's case.  We disagree with the judge's conclusion that "[t]he defendant was not prejudiced by the failure to preserve [the booking video]" because the judge allowed the defendant to cross-examine Moriarty and to comment on the missing video during his opening statement and closing argument.  We emphasize that the absence of the video

denied the defendant the most concrete evidence available to impeach Moriarty.  See Sasville, 35 Mass App. Ct. at 27 ("[I]n the absence of any concrete evidence . . ., the success of any impeachment would be remote, at best").  Although we have recognized that in certain circumstances the ability "to question and comment about the fact that [the defendant] was videotaped but the Commonwealth does not now have that evidence," would be a potential remedy to such prejudice, we have not concluded that such questioning or commentary is a cure-all.  Cameron, 25 Mass. App. Ct. at 549.

Here, the ability to question the Commonwealth about the loss of the video was not alone sufficient, particularly in light of the judge's declining to give a missing evidence instruction and the prosecutor's closing argument that the jury should listen to the judge's instructions, confine itself to the evidence, and not speculate about why there is no video.  In the absence of any instruction from the judge about how to consider the missing evidence, the potential for juror confusion was substantial.  Indeed the judge's standard instructions appeared to confirm the prosecutor's closing argument:

> "You are not to engage in any guesswork about any unanswered questions that remain in your mind or to speculate about what the real facts might or might not have been. . . .  You are to decide what the facts are solely from the evidence admitted in the case and not from suspicion or conjecture.  The evidence consists of the

testimony of witnesses as you recall it. . . .  Now some things that occur during a trial are not evidence and you may not consider them as evidence in deciding the facts of the case. . . .  The opening statements and closing arguments of the lawyers are not a substitute of the evidence."

In light of the combined effects of the prosecutor's closing argument and the judge's initial and final instructions to the jury, "a comment by defense counsel in his closing argument upon the 'Commonwealth's failure to produce the [missing evidence]' would not have provided a fair trial."  Sasville, 35 Mass. App. Ct. at 28.  The third factor of prejudice thus favors the defendant.

c.  Remedy for prejudice to defendant's case.  "Absent a clear abuse of discretion, we will not disturb the judge's decision concerning an appropriate remedy" for lost or destroyed evidence.  Commonwealth v. Harwood, 432 Mass. 290, 302 (2000).  In the instant case, all three factors of the balancing test favor the defendant.  In light of both the Commonwealth's culpability and the fact that the jury were effectively foreclosed from drawing any negative inference about the destroyed booking video, the remedies that were afforded to the defendant were "inadequate to protect the defendant's constitutional right to a fair trial."  Sasville, 35 Mass. App. Ct. at 23.

We therefore reverse the order denying the defendant's motion for a new trial. The judgment is reversed and the verdict is set aside. At any retrial of the defendant, the trial judge must instruct the jury on how to address the missing booking video. As the Supreme Judicial Court has explained, "[w]e have not directly addressed the issue of a missing evidence instruction. However, '[o]ur courts have fashioned or upheld various judicial remedies for the loss of evidence'" (footnote omitted). Commonwealth v. Kee, 449 Mass 550, 557 (2007), quoting from Harwood, supra at 302. "In certain cases where evidence has been lost or destroyed, it may be appropriate to instruct the jury that they may, but need not, draw an inference against the Commonwealth." Ibid. This is such a case. The instruction "should generally permit, rather than require, a negative inference against the Commonwealth." Id. at 558. The jury should also be instructed that "[i]t may be possible to draw more than one inference from the circumstances warranting the missing evidence instruction, . . . and choosing between competing inferences is the province of the jury." Id. at 558-559. Both the Commonwealth and the defendant are also free to introduce testimony and other evidence regarding the reasons why the booking video was not preserved or produced and

to argue the reasonable inferences that can be drawn therefrom.

Compare <u>Cameron</u>, 25 Mass App. Ct at 549.[11]

<u>Order denying motion for
new trial reversed</u>.

<u>Judgment reversed</u>.

<u>Verdict set aside</u>.

---

[11] As we conclude that the judgment must be reversed, we do not reach the defendant's claim of ineffective assistance of counsel, which he raises for the first time on appeal.  We note, however, that the courts of the Commonwealth "strongly disfavor raising claims of ineffective assistance on direct appeal." <u>Commonwealth</u> v. <u>Zinser</u>, 446 Mass. 807, 811 (2006).