NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-1027                                    Appeals Court


COMMONWEALTH  vs.  JOHN O'NEAL.


No. 17-P-1027.

Essex.     March 7, 2018. - May 2, 2018.

Present:  Milkey, Blake, & Desmond, JJ.


Practice, Criminal, Loss of evidence by prosecution,
     Preservation of evidence, Disclosure of evidence, New
     trial, Assistance of counsel, Required finding.  Evidence,
     Videotape, Relevancy and materiality.  Assault by Means of
     a Dangerous Weapon.




     Complaint received and sworn to in the Lynn Division of the
District Court Department on August 27, 2012.

     The case was tried before James D. Barretto, J., and a
motion for a new trial was heard by him


     Kathleen D. Mulligan for the defendant.
     Catherine L. Semel, Assistant District Attorney, for the
Commonwealth.


     MILKEY, J.  A District Court jury convicted the defendant

of assault and battery by means of a dangerous weapon (ABDW), a

shod foot.  The conviction was based on testimony that while the

defendant was being transported at the police station in a

device known as a "restraint chair," he kicked a Lynn police officer in the stomach. Before us now are the defendant's direct appeal and his appeal of the denial of his motion for new trial (which have been consolidated). The defendant argues that a new trial is warranted on three grounds: 1) the Commonwealth's failure to preserve and disclose a video surveillance recording of the incident, 2) ineffectiveness of trial counsel in failing to request a copy of the Lynn police department's policy on the use of restraint chairs, and 3) insufficient evidence to convict the defendant of ABDW based on reckless conduct, one of the two theories on which the case went to the jury. For the reasons that follow, we conclude that the defendant is entitled to a new trial. We therefore vacate the judgment and set aside the verdict.

Background. 1. The incident. At approximately 9:30 P.M. on August 24, 2012, Lynn police officers responded to reports of a disturbance outside a bar in Lynn. There, the police found the defendant in the aftermath of what appeared to be a bicycle accident. He was yelling at others at the scene, unsteady on his feet, smelled of alcohol, and had slurred speech.[1]

---

[1] The defendant testified that he was riding by the bar when patrons from the bar suddenly exited it causing him to crash into the door of the building. He admitted to having had a few drinks that night at a different bar, but stated that he was not intoxicated and that what police took to be signs of intoxication had other causes. For example, he testified that

Concluding that the defendant was intoxicated, the officers placed him into protective custody, handcuffed his hands behind his back, and transported him to the police station in the back of their cruiser. Once at the station garage, the defendant was unwilling or unable to exit the cruiser.[2] The officers therefore pulled him out of the vehicle, and placed him on the ground after he could not, or would not, stand.

At that point, the officers radioed their supervisors inside the station for assistance, and they were brought a restraint chair to transport the defendant to the booking area. A restraint chair is designed to immobilize unruly detainees. It has a seat that is tilted so that when the chair itself otherwise is upright, the person sitting there is lying back at an angle with his knees elevated above his hips. The chair has straps to be used to hold in place a detainee's wrists, ankles, lap and shoulders. In this instance, however, the officers did not use the available straps to secure the defendant in the restraint chair. Instead, after placing him in the chair with his hands handcuffed behind his back, they left him that way for

---

his speech was slurred because he had lost a major part of his tongue as the result of a skiing accident many years before.

[2] The defendant testified that he was unable to exit the cruiser because of the configuration of the seat and the fact that his hands were handcuffed behind him. The police officers interpreted his actions as deliberate.

the trip into the station.  According to the defendant, who testified at trial, this meant that his entire weight fell on his handcuffed wrists, causing him "excruciating pain."[3]  He further testified that this in turn caused him to writhe around in the chair as he sought to relieve the pressure off his wrists.  Without the defendant strapped in, the police held him down in the chair using their hands, causing further pressure on his handcuffed wrists.

The failure of the police to secure the defendant in the restraint chair appears to be at odds with a written policy that emerged only in postconviction discovery.  That policy set forth various procedures and requires "that all [police] personnel adhere strictly to [its] procedures."  The policy also requires that after initially placing a detainee in the restraint chair, "[t]he attached recommended manufacturer procedures for properly restraining a detainee in the [chair] should then be followed."  Under those procedures, the police are to attach the detainee's handcuffs to the supplied "handcuff tether," and then release the defendant's arms one at a time to attach them to the arm of the chair using a wrist wrap.

---

[3] The defendant, who was sixty-one years old at the time of the incident, testified without contradiction that he suffered from arthritis and a number of other serious ailments.

At least at one point during the trip from the garage to the booking area, the defendant's foot -- which the officers had not secured using the chair's straps and which, according to a police witness, was hanging off the side of the chair -- impeded the movement of the chair. The officers portrayed this as a deliberate effort by the defendant to thwart his being taken into the station house; the defendant portrayed it as the involuntary result of his trying to relieve the pressure on his handcuffed wrists. In either event, it is uncontested that the police officers tilted the restraint chair back in order to keep the chair moving, with one of the officers acknowledging that the chair was "tilted back further than it already is designed to do." The tilting of the chair in this manner also appears to violate the police policy on the use of restraint chairs, which mandates that "[t]he [restraint chair] and detainee shall remain in a seated upright position at all times while a detainee is restrained in the [chair], and should at no time be positioned backward so that the detainee is positioned on their back."

The defendant described the tilting of the chair as a sudden jerking that caused him to flail in it. He admitted that his foot came into contact with one of the officers, but he characterized it as an accidental "knee-jerk reaction" to the sudden tilting of the chair. The officers described it as a distinct and deliberate kick to the officer's stomach. The

officer who was struck described the kick as having been done with "quite a bit of force," and he testified that it "hurt."

The trial judge instructed the jury on the elements of ABDW (and of assault and battery as a lesser included offense) based on both intentional and reckless conduct. In addition, at the defendant's request, the judge instructed the jury on accident. Neither party objected.

2. <u>Surveillance recordings and pretrial discovery</u>.[4] Unbeknownst to the defendant prior to trial, the police station was outfitted with closed circuit surveillance cameras in all of the areas through which the defendant was transported in the restraint chair. Moreover, video recordings of what transpired there automatically would have been made. However, the system was set up so that, on a ten-week cycle, recordings are automatically recorded over. As a result, video recordings not retrieved within that ten-week period effectively are destroyed.

There is a paper trail that memorializes some of the pretrial communications between the prosecutor and defense counsel, and between the prosecutor and Lynn police, regarding whether there might be a video recording of the incident. On

---

[4] As noted below, the fact that the recording system existed in the relevant areas came out at trial. The further details about that system and the specifics of the discovery process were developed in the posttrial proceedings. With one notable exception discussed in detail <u>infra</u>, these facts are uncontested.

February 10, 2014, almost a year-and-a-half after the incident, the defendant filed an assented-to motion for discovery that, inter alia, specifically sought any "surveillance video recordings showing the defendant being moved from any parking lot [or] garage to the booking area of Lynn [p]olice [d]epartment on August 24, 2012[,] at approximately 9:30 [P.M.]"

That same day, the prosecutor asked the police department for "[v]ideotape or [p]hotograph(s) related to [the] case."  On May 27, 2014, the prosecutor again made a request of the department, this time requesting "[s]urveillance video" and specifically inquiring whether there was "[a]ny [b]ooking video of [the] incident[.]"  The police responded to the second request:  "[N]ot available."  That same day, the prosecutor filed a certificate of compliance certifying that the Commonwealth had satisfied its mandatory discovery obligations pursuant to Mass.R.Crim.P. 14, as amended, 444 Mass. 1501 (2005).  In that document, the prosecutor specifically certified that she had provided "[a]ny facts of an exculpatory nature" and "[a]ll other material and relevant evidence, [including] . . . photographs [and] tangible objects."

Beyond what that paper trail revealed, there ended up being a factual dispute as to what the prosecutor may have told defense counsel orally about whether video recordings ever had

been made.  The scope and resolution of that dispute are discussed further below.

3.  Video recording issues at trial.  The trial was brief, with only three witnesses:  two police officers and the defendant.  During cross-examination, defense counsel questioned the first police witness about the manner in which the officers had requested assistance once the defendant was out of the car and on the ground.  In this vein, counsel asked whether those to whom the witness had radioed for assistance "[could] see [the witness] from where they[] [were] at[.]"  The witness answered, "There are cameras, so they -- you know, when we ask them to come in, they could put it up on a monitor, but they're in the [commanding officer's] office."  This prompted defense counsel to ask:  "So there [are] camera[]s right there recording?"  After the witness confirmed this, defense counsel turned to other topics for questioning.  Before completing her cross-examination, counsel returned to the camera issue only evanescently, soliciting testimony that confirmed that there were cameras all along the way from the garage to the booking area.  There was no testimony elicited about whether any recordings were ever viewed or whether they still existed.

Before the Commonwealth began its redirect examination, both counsel requested to be heard at sidebar.  Although the transcript reveals that this discussion went on for at least

several minutes, only fragments of what was said were decipherable when the transcript was produced. From those fragments, we can discern that the defendant asserted that the prosecutor had told her that no video recordings ever had been made and that it was only now that she was learning otherwise. At one point, the judge's comments appear to suggest that he believed the defendant had waived claims of any discovery violations by not raising the issue prior to trial. What is missing from the transcript's memorialization of the sidebar interchanges remains profound. Most significantly, the specific relief that the defendant was requesting at that time is not at all apparent.[5]

In any event, after the sidebar discussion concluded, the judge invited the Commonwealth to continue with redirect examination. After the testimony of that witness concluded, the Commonwealth called its remaining witness, the police officer who had been struck. On direct examination, the Commonwealth asked no questions about the recordings, and the defendant pursued no cross-examination of that witness whatsoever.

---

[5] Pursuant to Mass.R.A.P. 8(c), as amended, 378 Mass. 932 (1979), the defendant eventually sought to settle the record as to what was said during this critical sidebar interchange. However, those efforts failed because none of the participants had any specific recollection.

At the close of the Commonwealth's case, and at her client's specific urging, defense counsel again raised the Commonwealth's failure to disclose the prior existence of the video recordings. This time, we know the specific relief that the defendant was requesting: a mistrial. The judge denied the request based on the reasoning he expressed earlier at sidebar (which turned out to be indecipherable on appeal). Addressing the defendant directly, the judge also stated, "your attorney very intelligently preserved all of your rights on the issue."

4. _Ruling on motion for new trial_. The defendant filed a motion for a new trial that was based primarily on the Commonwealth's failure to preserve and disclose the video recording of the incident. In the affidavit that she submitted in support of that motion, defense counsel averred that, in a conversation that transpired on a particular occasion prior to trial, the prosecutor specifically told her that "the booking area [was] not recorded." The prosecutor countered in her own affidavit that she never would have said this because she long had known that the booking area at the Lynn police station was video recorded, with the recordings available for only a limited period of time. She further averred that while she had no specific recollection of the conversation that she had with defense counsel, in accordance with her longstanding practice,

she would have passed along exactly what the police officer had told her; namely, that a recording was "not available."

Despite the direct conflict between the affidavits as to what the prosecutor had communicated to defense counsel orally and the judge's willingness to hold an evidentiary hearing, the parties jointly foreswore that opportunity. Instead, they presented the judge with a stipulation of facts, their dueling affidavits, and a copy of the restraint chair policy. In addition, the Commonwealth appropriately made significant concessions during argument on the motion. For example, the Commonwealth acknowledged that the Lynn police had informed her that based on the placement of the video cameras, the cameras "would have captured the incident" for which the defendant was convicted. In addition, citing to Commonwealth v. Heath, 89 Mass. App. Ct. 328 (2016) (Kafker, C.J.), the Commonwealth acknowledged that it was negligent in failing to preserve and produce the video recording.

Despite its concessions, the Commonwealth argued that a new trial nevertheless was not warranted. Although the Commonwealth downplayed the materiality of the missing video recording, it focused mainly on its argument that the defendant had not shown adequate prejudice. In this regard, the Commonwealth contended that because defense counsel learned about the prior existence of the video recordings during trial, she had an opportunity to

cross-examine the police witnesses about this, to argue the point in closing argument, and to request an appropriate jury instruction regarding the destruction of the video recording. In this manner, the Commonwealth maintained that it should not be held responsible for counsel's failure to pursue such remedies.

In assessing the Commonwealth's degree of culpability, the judge credited the prosecutor's affidavit that she would have told defense counsel that a video recording was "not available," not defense counsel's version that the prosecutor had stated that no such recording ever existed. Based on his knowledge of the prosecutor, who frequently appeared before him, the judge found no bad faith in her conduct. However, consistent with Heath, the judge ruled that the Commonwealth's failure to preserve and produce the video recording was negligent. The judge also concluded that "the defendant here has demonstrated the materiality of the evidence."

Nevertheless, the judge accepted the Commonwealth's arguments on prejudice. While noting that the facts here were similar to Heath, supra at 339 (in which a new trial was ordered), the judge distinguished that case on the grounds that, there, the defendant had requested and was denied an instruction on what inferences the jury could draw from the destruction of the video recording. See id. at 330. Here, by contrast, the

defendant had made no such request,[6] nor otherwise had sought to make use of the recording's destruction (i.e., through cross-examination or argument).[7] The judge reasoned that "if a new trial were allowed, the defendant would be entitled only to those same remedies he could have had but did not seek at trial." With the defendant having passed over such remedies at trial, the judge concluded that the defendant suffered no prejudice. The defendant's only potentially available posttrial recourse, the judge suggested, would have been a claim that his trial counsel was ineffective for failing to press the issue of the destroyed recording (an argument that the defendant has declined to pursue).

As noted, the existence and content of the Lynn police department's policy on the use of restraint chairs emerged only in postconviction discovery. In pressing for a new trial, the defendant also had argued that his trial counsel was ineffective for failing to request that policy prior to trial.[8] The judge rejected that claim. He reasoned that, even without that

---

[6] The judge stated that he would have been open to such a request had it been made.

[7] In addition, the judge noted that, in Heath, the prosecutor had argued to the jury that they should not speculate on why there was no video, something that did not occur here.

[8] The defendant did not argue that the Commonwealth had a duty to disclose that policy sua sponte, and we therefore have no occasion to consider that question.

policy, defense counsel was able to make an issue out of the manner in which the police had used the chair, and that the policy itself would have added little force to that argument.[9]

Discussion. 1. Failure to preserve and disclose video recording. As the parties recognize, the underlying facts in the case before us are quite similar to those at issue in Heath. Both cases involve an assault and battery on a police officer that occurred at a police station in an area where it would have been recorded, but the recording was not preserved. In Heath, we held that because the recording could have provided support for the defendant's claim that he never struck the officer, the defendant had satisfied his "initial burden to establish by means of 'concrete evidence' that the destroyed evidence was exculpatory." 89 Mass. App. Ct. at 334, quoting from Commonwealth v. Neal, 392 Mass. 1, 12 (1984). We then considered "the judge's application of the balancing test that

_____

[9] With reference to the familiar two-pronged test for ineffectiveness -- Commonwealth v. Saferian, 366 Mass. 89, 96 (1974) -- the judge stated that he was relying only on the first prong (whether counsel's conduct fell measurably below that of ordinary fallible counsel) and was not reaching the second prong (whether counsel's conduct "deprived the defendant of an otherwise available, substantial ground of defence"). However, this appears to have been a misstatement, because the judge's analysis focused largely on prejudice and did not express any definitive views on the first prong. The judge did observe that trial counsel was the defendant's third assigned attorney and that neither of his two prior attorneys had requested the police department's policy either.

'weigh[s] the culpability of the Commonwealth, the materiality of the evidence, and the potential prejudice to the defendant.'" Id. at 335, quoting from Commonwealth v. Williams, 455 Mass. 706, 716 (2010). We concluded that, contrary to the trial judge's assessment, the Commonwealth was negligent because "the police department had a video recording of [the] alleged crime committed in its booking area, with which the defendant was charged [and] the Commonwealth should have required no further notification by the defendant to recognize the need to preserve that video evidence." Id. at 336. We also concluded that the video plainly was material (an issue the judge did not reach). Id. at 338. Finally, we concluded that the judge erred in ruling that the defendant suffered no substantial prejudice from the judge's refusal to instruct the jury regarding the missing evidence and from the prosecutor's being allowed to argue that the jury should not speculate as to what the recording would have shown. Id. at 337-340. Accordingly, with all three considerations supporting the defendant's position, we ordered that he be granted a new trial. Id. at 339-340.

As noted, the judge in the case presently before us distinguished Heath on the ground that the defendant there had pressed the issue at trial. However, a close examination of the differences between the this case and Heath reveals that, if

anything, the defendant here has a stronger case for a new trial.

Having been informed prior to trial that such a key piece of evidence had not been preserved, see id. at 330 n.4, defense counsel in Heath unsurprisingly was prepared to try to take advantage of the Commonwealth's negligence in failing to do so. Here, by contrast, defense counsel was unaware that the recording once had existed until the midst of a very brief trial. Moreover, unlike in Heath, the jury here never learned that the police had allowed the recording to be destroyed.

To be sure, counsel arguably bears some responsibility for her late appreciation that the tape once had existed. That is, a more perspicacious attorney might have sensed the ambiguity inherent in the prosecutor's terse response that a recording was "not available," and therefore done more prior to trial to inquire whether the incident had been recorded and, if so, why any such recording was not available. However, while we accept the judge's finding that the prosecutor did not act in bad faith, it remains uncontroverted that -- despite the prosecutor's having been aware that a video recording of the booking area once would have existed -- she never overtly called this to the defendant's attention prior to trial.[10] Where the

---

[10] At one point, the judge referenced the prosecutor as having stated that she had told defense counsel that a video

prosecutor failed to disclose that a recording had been made, the Commonwealth is not in a position to blame defense counsel for misconstruing the equivocal and incomplete discovery response that the Commonwealth provided.

With respect to defense counsel's conduct at trial, the Commonwealth no doubt is correct that some highly competent trial attorneys might have been able, on the spot, to appreciate that the testimony about the cameras meant that a recording of the incident once had existed and -- based on the discovery response that a recording was "not available" -- could have surmised that the recording in the interim had not been preserved. Then, armed with this knowledge, perhaps such counsel instantly might have been able to make effective use of this fact through cross-examination and argument, and by requesting a jury instruction on destroyed evidence.[11] However, focusing on what a particularly able trial counsel might have accomplished fails to account for the predicament that the Commonwealth's incomplete disclosure caused here. As Justice

---

recording was "no longer available" (a phrasing that -- while similar to "not available" -- would have communicated that such a recording once had existed). Defense counsel accurately pointed out that the prosecutor never made that claim.

[11] During the hearing on the motion for new trial, the judge commented -- with reference to his own experience as a trial counsel -- that "if I were trial counsel, I would at least be on notice that [the incident] was probably captured on videotape enough to request a special instruction."

Kaplan once observed in a case involving a broadly similar midtrial disclosure, "[t]he prosecutor's late, piecemeal, and incomplete disclosures forced on defense counsel the necessity of making difficult tactical decisions quickly in the heat of trial." Commonwealth v. Ellison, 376 Mass. 1, 25 (1978). Even though "[i]n retrospect, it may be thought that [defense] counsel did not use to maximum advantage those parts of the story he did finally secure out of the prosecutor's possession[,] . . . [a] defendant should not be held to a strict standard in order to patch over the prosecution's conduct." Id. at 26-27. While it is true that "[a] defendant assuredly has the burden of showing prejudicial consequences when seeking relief from disclosure delays by the Commonwealth[,] . . . [w]e should not expect even the criminal defense adept to accommodate instantly to surprise [evidence] at the moment of trial and to rely entirely on improvised cross-examination in order to counter such possibly [critical] evidence." Commonwealth v. Fossa, 40 Mass. App. Ct. 563, 568 (1996).

With these observations in place, we turn to the balancing test recognized in Commonwealth v. Williams, 455 Mass. at 716. While the Commonwealth exhibited no bad faith, nevertheless it was negligent both in failing to preserve the recording and in failing fully to disclose that the recording had once existed. In addition, the materiality of the missing recording plainly

was established, as the judge recognized.  Finally, in light of our analysis of defense counsel's conduct at trial, the defendant suffered both potential prejudice from being deprived of the recording and actual prejudice from being deprived of using the fact that the recording had been destroyed.  Here, as in Heath, the defendant has shown that application of the Williams factors support his claim for a new trial.  We therefore conclude that the judge abused his discretion in denying the defendant's motion for new trial.[12]

2.  Ineffectiveness of counsel.  We need not resolve whether the defendant independently might be entitled to a new trial based on his argument that trial counsel was ineffective for failing to learn of the mandatory policy on the use of restraint chairs.  Therefore, we do not decide whether -- in circumstances where a defendant's entire defense was based on allegations that police misused a particular piece of equipment -- the potential existence of a police policy on the use of such equipment presents an obvious area of inquiry.  We do, however, note our disagreement with the judge's assessment that

---

[12] Having decided that the judge abused his discretion in denying the motion for a new trial, we need not resolve whether the judge erred in denying the requested mistrial.  We also need not resolve what to do about the fact that the critical sidebar discussion of the destroyed video recording could not be recreated.

disclosure of the restraint chair policy could have added only marginal value to that defense. It is one thing for a jury to hear a defendant's complaints about police conduct, and quite another for them to learn that the complained-of conduct might well have violated a mandatory, written policy governing such conduct.[13]

3. Sufficiency of evidence of reckless assault and battery. The Commonwealth presented its ABDW case primarily based on the theory that the defendant intended to kick the officer with his sneaker. Nevertheless, the jury were also instructed on ABDW based on reckless conduct. To sustain a conviction on the latter theory, the Commonwealth was required to prove beyond a reasonable doubt that a defendant intentionally committed "a wanton or reckless act (something more than gross negligence) causing physical or bodily injury to another" by means of a dangerous weapon. Commonwealth v. Burno, 396 Mass. 622, 625 (1986).

As the defendant accurately points out, there was no evidence that the kick broke any skin or caused any bruising or other manifestations of physical harm. Nor was there any evidence that the kick necessitated any medical treatment.

---

[13] Nothing in this opinion should be interpreted as suggesting that a violation of the policy by itself would be a defense to the charged conduct.

Based on this, the defendant argues that there was no proof that the victim suffered "physical or bodily injury," and, hence, there was insufficient evidence to support an ABDW based on reckless conduct. In turn, the defendant argues that because the evidence necessary to support a reckless ABDW was absent and the case went to the jury on both theories, he is entitled to a new trial. See Commonwealth v. Green, 420 Mass. 771, 781 (1995) ("The possibility that the verdicts were based on theories for which the Commonwealth failed to offer sufficient evidence for a rational jury to find guilt beyond a reasonable doubt necessitates our setting them aside"). But see Commonwealth v. Mistretta, 84 Mass. App. Ct. 906, 907 (2013), quoting from Commonwealth v. Santos, 440 Mass. 281, 288 (2003) (specific unanimity instruction not required where defendant is charged with intentional and reckless assault and battery, because these are "closely related subcategories of the same crime" that "are not 'separate, distinct, and essentially unrelated ways in which the same crime can be committed'").[14]

In the end, for at least two reasons, we need not reach the defendant's "two theories" argument in this appeal. First, the

---

[14] The defendant points out that the First Circuit has taken the unusual step of expressing its view that Mistretta was wrongly decided. See United States v. Tavares, 843 F.3d 1, 17-18 (1st Cir. 2016) ("The differences in the two forms [of ABDW,] . . . intentional versus reckless, . . . are substantively distinct and therefore constitute alternative elements . . .").

defendant waived such an argument by not raising it before the case went to the jury. See Commonwealth v. Berry, 431 Mass. 326, 331 (2000) ("[W]hen the defendant submits a generally expressed motion for a required finding of not guilty of [an offense that can be based on multiple theories], the case may be submitted to the jury as long as one theory is supported by the evidence"). Second, the defendant raised his claim that the evidence of a reckless ABDW was insufficient only to support the vacating of his conviction, relief we have granted on other grounds.[15]

Judgment vacated.

Verdict set aside.

Order denying motion for new trial reversed.

---

[15] In any event, even if we ultimately were to agree with the defendant's insufficiency argument in toto, he potentially would face double jeopardy only with respect to an ABDW prosecution based on a reckless theory and only at the point the Commonwealth pursued such a prosecution. See Commonwealth v. Bell, 455 Mass. 408, 419 (2009), abrogated on other grounds by Commonwealth v. LaBrie, 473 Mass. 754, 763-764 (2016).