The defendant, Peter Hurley, appeals his convictions of operating under the influence (OUI), fifth offense, in violation of G. L. c. 90, § 24(1) ; resisting arrest, in violation of G. L. c. 268, § 32B ; and threats to commit a crime, in violation of G. L. c. 275, § 2. On appeal, the defendant contends that (1) he was prejudiced by not having access to potential exculpatory video recording (video) evidence, and (2) his jury waiver was ineffective as to the subsequent offense trial. We affirm the defendant's underlying convictions but vacate the subsequent offense conviction.
Background. The defendant was observed by a Peabody police officer driving without headlights, through a red light (twice), and over a curb. According to the Commonwealth, once the defendant was pulled over, he fell down, walked towards the woods, stumbled and fell, resisted being handcuffed and put in the cruiser, and verbally threatened the police officer while being transported to the police station. The officers formed the opinion that he was intoxicated. The Commonwealth sought to prove that, upon arrival at the police station garage, it took several officers to remove the defendant as he yelled, screamed, and kicked at them from the rear seat of the cruiser. Soon after the officers brought the defendant into the booking area, he tripped and fell, resulting in a bleeding gash over his right eye. The defendant continued to act belligerently and was ultimately placed in a cell; emergency medical technicians were called to treat his wound.
The defendant's theory of the case, as presented through cross-examination and argument, was that he was not intoxicated, belligerent, or combative, and that he did not receive the gash on his eye at the police station. He argued to the jury that the police had failed to preserve a booking video which would have shown the officers' testimony to be untrue.
Discussion. Missing video. Prior to trial, the defendant filed a motion for discovery requesting that the Commonwealth preserve the recordings from cameras in the booking area of the police station, which was allowed. The Commonwealth failed to preserve the footage. The defendant contends that he was prejudiced by the lost booking area videos because they would have shown that the defendant sustained his injuries prior to arriving at the police station, thus undercutting the credibility of the officers.[2] He suggests that the missing footage would show whether the police officers "exaggerated in their assessment of the Defendant's conduct at the time of, and subsequent to his arrest, thereby calling the officers' credibility into question."[3]
Depending on what the footage showed, the videos could have undermined the credibility of the testifying officers. The defendant explored the failure to preserve the evidence through the cross-examination of multiple witnesses. The defendant also emphasized the loss of the videos in his opening statement and closing argument to the jury. See Commonwealth v. Cameron, 25 Mass. App. Ct. 538, 549 (1988). Cf. Commonwealth v. Heath, 89 Mass. App. Ct. 328, 338 (2016). In a further remedial effort to abrogate any possible prejudice, the judge explicitly instructed the jurors on two occasions that (1) the video evidence had not been preserved through the fault of the Commonwealth and not the defendant, (2) that the defendant was contesting what happened in the police station, and (3) that the jury could consider the Commonwealth's failure to preserve the evidence in assessing the credibility of the witnesses' testimony. Although this case was tried before this court's decision in Commonwealth v. Heath, supra, the judge's instructions to the jury aligned with the Heath court's holding. See id. at 339-340. It is evident that the judge took the utmost care to conduct the trial in a way that would mitigate the possible prejudice caused by the missing booking video. See Commonwealth v. Kee, 449 Mass. 550, 557-558 (2007). The judge did not abuse his discretion.
Jury waiver. Immediately following the jury's guilty verdicts, a bench trial was conducted on the second and subsequent offense portion of the indictment. Before beginning, the judge engaged the defendant in an extensive jury waiver colloquy during which the defendant insisted that he did not want to be tried by the jury that had just convicted him, but wanted new juries to be empanelled for each of his four prior offenses. The judge explained to the defendant that he had decided to hold the existing jury, thus the defendant had two choices, continue with the existing jury or engage in a bench trial. The defendant insisted that he did not want to be tried by the existing jury, nor did he want to be tried by the judge. At a stalemate, the judge decided to proceed to a bench trial and dismissed the jury. The defendant then refused to sign the jury waiver form. The defendant was tried, jury waived, and found guilty as a subsequent offender.
The defendant contends that his conviction as a subsequent offender was invalid because he never signed a written waiver of his right to a jury trial. "Indeed, our case law has established a 'bright-line' rule under which a defendant's jury waiver is only effective when a signed written waiver is filed with the court." Commonwealth v. Johnson, 79 Mass. App. Ct. 903, 904 (2011), quoting from Commonwealth v. Osborne, 445 Mass. 776, 781 (2006). "[T]he requirement of a signed, written jury waiver is an important protection provided by the Legislature for the benefit of a criminal defendant." Id. at 780. Despite the defendant's insistence that he receive a new jury for every prior offense at issue, it is at the judge's discretion whether to empanel a new jury.[4] Commonwealth v. Thompson, 427 Mass. 729, 736-738 (1998) ; G. L. c. 278, § 11A. If a judge decides to hold the jury for the second part of a bifurcated trial, the defendant's only other option is a jury-waived bench trial. Thompson, supra at 737-738.
Here, the defendant objected to both a trial by the existing jury and to a jury-waived trial. The judge would have been permitted to try the unwilling defendant before the held jury, but not to proceed with a bench trial. See Thompson, supra at 736-738. Once the jury were released, the only remaining option was to proceed with a new jury.[5]
The judgments on the charges of operating under the influence of intoxicating liquor, resisting arrest, and threats to commit a crime are affirmed. The order dated September 16, 2016, denying the motion for postconviction relief is reversed. The finding of guilty of operating under the influence of intoxicating liquor, subsequent offense, is vacated.
So ordered.
Affirmed in part; reversed in part; and vacated in part.

At trial, multiple witnesses testified that on the night of the defendant's arrest there had been at least two functioning cameras in the booking area of the police station.

Prior to trial, the defendant filed multiple motions to dismiss due to the lost videos, which were denied. Two judges concluded that dismissal of the charges was not warranted and that the video evidence would only be relevant for a collateral issue-the credibility of the police officer witnesses. The defendant renewed his motion to dismiss at trial, which was also denied. The defendant does not contend on appeal that it was an abuse of discretion to deny his motions to dismiss, but maintains that he was prejudiced by not having access to the potential exculpatory evidence that the video tapes contained.

There is no merit to the defendant's argument that he is entitled to be tried by a new jury, or four new juries, merely because the statute governing subsequent offense trials does not prohibit it. See G. L. c. 278, § 11A ("The court may, in its discretion, either hold the jury which returned the verdict of guilty of the crime, the trial of which was just completed, or it may order the impanelling of a new jury to try the issue of conviction of one or more prior offenses"). See also Commonwealth v. Thompson, 427 Mass. 729, 736-737 (1998) ("[The defendant] contends that the jury in this case could not possibly be impartial in the habitual criminal proceeding.... This argument is frivolous. ... Requiring the empanelling of a new jury in a case of this nature would entail that a new jury is required in virtually every habitual criminal proceeding. That is certainly not what the Legislature intended in enacting § 11A").

The Commonwealth has acknowledged that the defendant is entitled to a new trial on the subsequent offense portion of the indictment, a conclusion which we also reach upon independent review.