NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12629

COMMONWEALTH  vs.  VINCENT A. TISCIONE, THIRD.


Worcester.      March 4, 2019. - June 25, 2019.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, &
Kafker, JJ.


Firearms.  Jury and Jurors.  Practice, Criminal, Jury and
jurors, Deliberation of jury, Fair trial, Harmless error.
Constitutional Law, Jury, Fair trial, Harmless error.  Fair
Trial.  Error, Harmless.  Evidence, Constructive
possession, Firearm.




Indictments found and returned in the Superior Court
Department on September 5, 2014.

The cases were tried before Daniel M. Wrenn, J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


Sara A. Laroche for the defendant.
Susan M. Oftring, Assistant District Attorney, for the
Commonwealth.


BUDD, J.  In December 2015, the defendant, Vincent A.

Tiscione, was tried on multiple charges relating to the illegal

possession and improper storage of firearms and ammunition.

During deliberations, a juror informed a court officer that she "could not continue" to deliberate. Subsequently, in a colloquy with the judge, the juror stated that she was "upset" by other jurors "being argumentative," and that she was "emotional" because of the health issues of various family members. After the colloquy, the judge discharged the deliberating juror and replaced her with an alternate juror. Ninety minutes later, the jury found the defendant guilty. The Appeals Court affirmed the judgments. Commonwealth v. Tiscione, 93 Mass. App. Ct. 1118 (2018). We conclude that the juror was discharged for reasons that were not purely personal to the juror and that her dismissal was prejudicial error, and therefore we vacate the judgments entered against the defendant. Because we also conclude that there was sufficient evidence to survive the defendant's motion for required findings of not guilty, we remand this case to the Superior Court for further proceedings consistent with this opinion.[1]

---

[1] As we vacate the defendant's convictions based on the erroneous discharge of a deliberating juror, we need not reach the remaining issues raised on further appellate review, i.e., the admission of prior bad acts evidence and the prosecutor's closing argument. See Commonwealth v. Tiscione, 93 Mass. App. Ct. 1118 (2018). However, to the extent that these issues reemerge in a retrial, we reject the defendant's arguments for substantially the same reasons stated by the Appeals Court.

Background.  1.  Evidence at trial.  The defendant was tried on several firearm-related offenses.[2]  Before his arrest, the defendant was living in an apartment with his girlfriend and his girlfriend's family.  The Commonwealth's main witness -- the mother of the defendant's girlfriend -- testified that the defendant pointed a shotgun at someone in the apartment before placing the shotgun under his bed.  In another incident, the witness also saw the defendant placing a handgun in his bedroom closet.  When the defendant was away, the witness took the handgun and hid it in a hole in the wall of the apartment.  The defendant later discovered that the handgun was missing; he stated, "Where's my gun?  Where's my F-ing gun?" and "I'll be back, and you better find my F-ing gun."

The witness telephoned the police and directed them to the hidden handgun in the wall; she also informed the police that there might have been other guns in that bedroom.  The police were thus able to recover a pistol and a shotgun from the apartment, both with ammunition.  The theory of the defense at

---

[2] The defendant was convicted by a jury of two counts of possession of a firearm without a firearm identification card (G. L. c. 269, § 10 [h]), two counts of possession of ammunition without a firearm identification card (G. L. c. 269, § 10 [h]), and two counts of improper storage of a firearm (G. L. c. 140, § 131L [a], [b]).  He thereafter was convicted at a bench trial of two counts each of possession of a firearm and possession of ammunition while previously having been convicted of a violent crime or serious drug offense (G. L. c. 269, § 10G [a]).

trial was that the Commonwealth had not adequately proved that the defendant possessed the firearms and ammunition; in his motion for required findings of not guilty, the defendant also argued that there was no evidence that the ammunition was, in fact, capable of being fired. The judge denied the motion.

2. Jury deliberations. The jury began their deliberations late in the day on December 9. Approximately one and one-half hours after resuming their deliberations on the morning of December 10, the jury submitted a note to the trial judge asking, "If we cannot get 12-0, must we vote 'not guilty'?"[3] The judge brought the jury into the court room and instructed them that all verdicts must be unanimous.

During the lunch break, a court officer informed the judge that juror no. 44 had removed herself from the jury room, that she was "visibly upset, visibly shaken," and that she stated that "she could not continue as a juror." The court officer further stated that when he asked the juror to return to deliberations, she refused, at which point deliberations were halted. The judge conferred with the parties, and the juror then was brought before the court for a colloquy.

---

[3] A second note, submitted with the first, asked whether the jury could consider the counts out of order. In response, the judge told the jury that they could address the counts in any order.

When the judge asked the juror why she would not go back into the deliberation room, she told the judge that "a couple people [were] being argumentative," that another juror accused her of "putting words in [his] mouth," and that "it was just enough to upset [her]." She acknowledged, however, that she did not feel threatened. The judge spoke with the parties outside the juror's presence and indicated that, based on her responses, it appeared that the juror's distress stemmed from her views on the case.[4]

When the juror returned, the judge made further inquiry. He noted that the juror was "emotional," and asked her about it. The juror responded by listing several family members and the health issues each was experiencing, including her father who had dementia, her sister's husband who had Alzheimer's disease, her husband who had undergone hip surgery one month prior, and her daughter's father-in-law who was recovering from open-heart surgery. She stated that she "[felt] like [she] should be with family."

The two then had the following exchange:

The judge: "So if I could summarize, you've got a lot on your plate separate and apart from your jury service; is that right?"

The juror: "Yes."

---

[4] The judge stated: "At least preliminarily, it sounds like this is not a personal problem, but it relates to [the juror's] views on the case, or at least that's what I've heard so far."

The judge: "And the process of being put in a deliberation room and going back and forth was something that emotionally kind of tipped the balance for you?"

The juror: "Yes."

The judge: "And all of your life experiences and the loads of life, if you will, has reached a tipping point for you. Is that fair?"

The juror: "Yes."

The judge: "All right. I don't want to put words in your mouth. If what I've said isn't -- "

The juror: "No; I just -- I didn't think we would be here this long. I feel like I should be with my family; and the people in there -- it's just arguing, and I'm uncomfortable."

Ultimately, the judge concluded that there was "good cause" to discharge the juror, finding at that time that she had "a personal issue," that "the burdens in her life" were "significant," that "her personal emotional state . . . ha[d] overwhelmed her," and that "she no longer [had] an ability to participate as a juror in this case." The defendant requested that the judge inquire of the other jurors to ensure that they were not "bullying" the juror for her views. The judge disagreed, stating that such an inquiry would impermissibly reveal the substance of the deliberations. Over the defendant's objection, the judge discharged the juror and replaced her with an alternate juror.

The judge instructed the remaining jurors to "begin deliberations anew" with the alternate juror. At some point during the renewed deliberations, the court belatedly received a note generated at 11:35 A.M. -- that is, after the jury had received their supplementary instruction that all verdicts had to be unanimous but before juror no. 44 was dismissed. This note indicated that, despite the judge's supplementary instruction, the jury had remained deadlocked for the remainder of the morning.

Approximately ninety minutes after the alternate juror joined the jury, they returned guilty verdicts on all charges before them.

Discussion. 1. Discharge of deliberating juror. a. Standard. "The discharge of a deliberating juror is a sensitive undertaking and is fraught with potential for error. It is to be done only in special circumstances, and with special precautions." Commonwealth v. Connor, 392 Mass. 838, 843 (1984). Discharging a juror during deliberations is governed by G. L. c. 234A, § 39, which states in pertinent part:

> "The court shall have the discretionary authority to
> dismiss a juror at any time in the best interests of
> justice. . . . The court shall have authority to excuse
> and discharge a juror participating in jury deliberations

> after a hearing only upon a finding of an emergency or other compelling reason."[5]

The rules of criminal procedure similarly provide:

> "If, at any time after the final submission of the case by the court to the jury but before the jury has agreed on a verdict, a juror dies, becomes ill, or is unable to perform his duty for any other cause, the judge may order him to be discharged and shall direct the clerk to place the names of all the remaining alternate jurors in a box and draw the name of an alternate who shall take the place of the discharged juror on the jury, which shall renew its deliberations with the alternate juror."

Mass. R. Crim. P. 20 (d) (3), 378 Mass. 889 (1979).

During deliberations, a juror properly may be discharged "only [for] reasons personal to [that] juror, having nothing whatever to do with the issues of the case or with the juror's relationship with his [or her] fellow jurors." Connor, 392 Mass. at 844-845. "Allowing discharge only for personal reasons ensures that such action will not 'affect the substance or the course of the deliberations.'" Commonwealth v. Swafford, 441 Mass. 329, 336 (2004), quoting Connor, supra at 845 n.4.

---

[5] General Laws c. 234, § 26B, as amended through St. 1979, c. 344, § 9A, similarly provided that if a deliberating juror "dies, or becomes ill, or is unable to perform his duty for any other good cause shown to the court, the court may order him to be discharged," but was repealed in 2016. St. 2016, c. 36, § 1. The trial here occurred before the repeal of this statute; but, in any case, we have treated the "good cause" standard of § 26B as synonymous with the "best interests of justice" and "compelling reason" standards of G. L. c. 234A, § 39. See Commonwealth v. Cousin, 449 Mass. 809, 821 n.19 (2007), cert. denied, 553 U.S. 1007 (2008).

To make this determination, a judge must hold a hearing with the juror in question. Connor, 392 Mass. at 843-844. "[B]ecause the inquiry may well lead to a conclusion that the juror cannot be discharged, the judge must scrupulously avoid any questioning that may affect the juror's judgment." Id. at 844, citing Commonwealth v. Webster, 391 Mass. 271, 275-276 (1984). We defer to a judge's factual findings where they are not clearly erroneous. See Swafford, 441 Mass. at 337, citing Commonwealth v. Tennison, 440 Mass. 553, 560 (2003).

b. Application. Here, the judge properly held a hearing to question the juror in the presence of both parties to find out why the juror would not continue to deliberate and to determine whether removal of the juror was warranted. During the colloquy, the juror told the judge that she did not want to return to deliberate because members of the jury were "being argumentative," that another juror accused her of "putting words in [his] mouth," and that it "upset" her. Although the judge initially concluded that the juror's problem stemmed from her "views on the case" rather than a "personal problem," after the juror additionally expressed concern about her family members,

the judge concluded that there was "good cause" to discharge her.[6]

Because the juror stated during the colloquy that her distress was based not on personal issues alone, but also on events that took place in the jury room with her fellow jurors, it was error to discharge her. See Connor, 392 Mass. at 844-845. The Commonwealth points to Swafford, 441 Mass. 329, and Commonwealth v. Leftwich, 430 Mass. 865 (2000), two cases in which we upheld the discharge of a deliberating juror, arguing that the circumstances here were comparable. We disagree.

In Leftwich, 430 Mass. at 873-874, we concluded that the juror was discharged properly where the judge based the decision to discharge on "the juror's statement that she could not continue to deliberate in a fair manner and because of the physical manifestations of stress that the judge had observed." The judge found that "the juror was very emotionally distraught, was shaking 'from head to toe,' and was clearly under extraordinary stress." Id. at 873. Although the juror's "extreme emotional distress" was connected, in part, to deliberations, we concluded that "[i]f a deliberating juror is

---

[6] In finding that the juror's "personal life experiences" had "overwhelmed her, and [that] she no longer [had] an ability to participate as a juror," the judge did not explicitly find that the reasons for discharge were purely personal. However, to the extent that he implicitly so found, the finding was clearly erroneous.

determined to be experiencing severe emotional or mental distress, well beyond that level of distress that often accompanies deliberations, it is within the trial judge's discretion to discharge that juror after consideration of all the circumstances," because "[w]e do not . . . require jurors to serve at their peril." Id. at 874. In contrast, here, the judge noted that the juror was "visibly upset" and "emotional," but there was no finding that the juror was incapacitated by "extreme emotional distress." See id. at 872-874 (deliberating juror was "having difficulty breathing," among other issues, due to stress of deliberations).

Nor are the circumstances in this case akin to those in Swafford, 441 Mass. at 337, where we held that a judge properly discharged a juror who "physically separated herself from the jury, took leave from participation in their deliberations, and told the judge four times that she could no longer be fair and impartial." We concluded that although the juror's behavior appeared to stem from a perceived slight by another juror, "the judge's finding that the juror's reclusive and abdicatory behavior was a problem personal to her, and not in any normal sense the product of her relationship to her fellow jurors, was not clearly erroneous." See id. Here, the juror did not tell the judge that she could not be fair, nor was there any indication that the juror's behavior was aberrant in any way.

We also note that, although the issue goes to the question of prejudice, there was no concern in either Leftwich or Swafford that the discharged juror held a minority view or that the jury were at an impasse.  See Swafford, 441 Mass. at 337; Leftwich, 430 Mass. at 874.  In contrast, here, as discussed in more detail infra, there were indications that the jury were deadlocked at the time the juror refused to continue to deliberate.

We do understand that the judge here was in a difficult position:  he was confronted with an emotional juror who had removed herself from the jury room and said that she would not continue to deliberate.  However, the judge had options available to him rather than dismissing the juror at that point.

For example, a judge in this situation might express sympathy for the juror's personal situation, but also remind the reluctant juror of the defendant's right to a fair trial, and of the oath the juror took at the beginning of the trial to "well and truly try the issue between the commonwealth and the defendant . . . according to [the] evidence."  G. L. c. 278, § 4.  If, as in this case, it appears that emotions in the jury room are heated, a judge might direct the jury to take a break to allow for a cooling off period.  See Mass. R. Crim. P. 20 (e) (3), 378 Mass. 889 (1979).  Indeed, depending on the time of day, a judge might even suspend deliberations until the

following business day.  In our view, a juror expressing reluctance (or an outright refusal) to continue to deliberate is an invitation to the judge to discuss the juror's concerns generally -- that is, without delving into deliberations.  See, e.g., Commonwealth v. McCowen, 458 Mass. 461, 487-489 (2010) (member of deadlocked jury properly discharged where father of juror's child was being prosecuted by same district attorney).  It is also an opportunity for the judge to explain the importance of that juror's participation in the process to ensure that the defendant receives a fair trial.  See Commonwealth v. Torres, 453 Mass. 722, 731-737 (2009) (due to problem juror, "the deliberations took several sharp turns, but the judge, with a responsive and steady hand, kept the jury on course by continually focusing them on their duties to deliberate fairly").

We acknowledge that, had the juror rejoined the deliberations, the end result well might have been a mistrial.  Although it is not the ideal outcome, mistrials do occur.  If, after "due and thorough deliberation," the jury report to the judge twice that they are deadlocked, "they shall not be sent out again without their own consent, unless they ask from the court some further explanation of the law."  See G. L. c. 234A, § 68C.  Nevertheless, in these circumstances, an attempt must first be made to determine whether the juror's purported

inability to continue deliberations is a "demonstrable reality" (citation omitted). See Connor, 392 Mass. at 846-847.

c. Prejudice. Having concluded that the discharge of the juror during deliberations was error, we turn to the question whether the error was prejudicial to the defendant. See G. L. c. 234A, § 74, which provides that any "irregularity" with respect to discharging or managing jurors, among other things, will not lead to reversal unless the error is preserved by objection and the "objecting party has been specially injured or prejudiced thereby."[7]

We begin by noting that the error was of constitutional dimension. Article 12 of the Massachusetts Declaration of Rights affords each criminal defendant the right to a fair jury trial. That right has the potential to be infringed upon when a juror is discharged during deliberations. Swafford, 441 Mass. at 336, quoting Connor, 392 Mass. at 845 n.4 (allowing "discharge only for personal reasons ensures that such action will not 'affect the substance or the course of the deliberations'"). See United States v. Brown, 823 F.2d 591, 596-597 (D.C. Cir. 1987) (discharging deliberating juror for

---

[7] We note that requiring that an objection be preserved under this statute could be in some cases "incompatible with the constitutional right to trial by jury." Commonwealth v. Sheehy, 412 Mass. 235, 240 (1992); however, here the defendant made a timely objection to the juror's dismissal.

reasons related to his or her doubts about government's evidence is "unacceptable under the [United States] Constitution"). "In order to safeguard a defendant's right to trial by a fair and impartial jury, the judge must carefully scrutinize the reasons offered for discharging a juror at this critical stage of trial 'to ensure that a lone dissenting juror is not permitted to evade [the] responsibilities' of his oath or to avoid the stress associated with persistently asserting a minority position in deliberations." Commonwealth v. Francis, 432 Mass. 353, 368 (2000), quoting Connor, supra at 843.

A constitutional error preserved by a timely objection, as this one was, is reviewed to determine whether it was harmless beyond a reasonable doubt. Commonwealth v. Vinnie, 428 Mass. 161, 163, cert. denied, 525 U.S. 1007 (1998), citing Chapman v. California, 386 U.S. 18, 23 (1967). Upon review, we conclude that, given the events that took place before and after the juror's replacement, and considering the substance of the colloquy with the juror, discharging the juror was not harmless beyond a reasonable doubt.

Prior to the colloquy with the juror, the jury sent a note to the judge asking, "If we cannot get 12-0, must we vote 'not guilty'?" During the colloquy, the juror indicated that people were arguing and that it upset her. An additional note, which was generated in the morning but did not reach the court until

after the juror had been dismissed and replaced, indicated that the jury were deadlocked on two counts.  Finally, approximately ninety minutes after the juror was replaced and the jury were instructed to begin their deliberations anew, the defendant was convicted on all counts.  Together, these facts allow for the inference that the removal of the juror had an impact on the outcome of the case.  In the circumstances, the Commonwealth cannot meet its burden to show that the error was not harmless beyond a reasonable doubt.  See Chapman, 386 U.S. at 24 (burden is on "beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained").  See also Commonwealth v. Marini, 375 Mass. 510, 520 (1978) (same).

Jury trials often, if not always, require the balancing of countervailing concerns.  It appears that in this case jury deliberations became contentious, and when combined with the juror's personal circumstances, this contentiousness resulted in the juror's reluctance to continue her involvement.  However, ensuring a fair trial in which the outcome is a unanimous verdict or, if need be, a mistrial is the reason for the rule articulated in Connor, 392 Mass. at 844, which allows a deliberating juror to be discharged "only [for] reasons personal to [the] juror" (emphasis added).  Thus, as "uncomfortable" as the juror may have felt in the jury room, our law does not allow

for the removal of a dissenting juror to resolve an impasse in deliberations.  See id. at 843, citing United States v. Lamb, 529 F.2d 1153, 1156 (9th Cir. 1975).  Here, reversal is required.

2.  Sufficiency of the evidence.  The defendant argues that the trial judge erred in denying his motion for required findings of not guilty on the counts relating to the possession of a shotgun because the Commonwealth failed to present sufficient evidence from which the jury could infer that the defendant had constructive possession of the shotgun recovered as a result of the search.  We disagree.

In reviewing evidence presented at trial for sufficiency, we view it in the light most favorable to the prosecution. Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979).  Showing the defendant's constructive possession of the firearms and ammunition requires only "proof of 'knowledge coupled with the ability and intention to exercise dominion and control.'" Commonwealth v. Dagraca-Teixeira, 471 Mass. 1002, 1004 (2015), quoting Commonwealth v. Brzezinski, 405 Mass. 401, 409 (1989). "This proof 'may be established by circumstantial evidence, and the inferences that can be drawn therefrom.'"  Dagraca-Teixeira, supra, quoting Brzezinski, supra.

Here, there was testimony that the defendant occupied the apartment where the firearms and ammunition were found. The defendant was also seen handling and storing the guns while in the apartment. The defendant had numerous personal belongings in the same closet as the shotgun. Finally, the guns and ammunition themselves were available to the jury as exhibits for inspection. The defendant does not dispute that he lacked the requisite firearm identification card under G. L. c. 269, § 10 (h), or that the firearms were improperly stored under G. L. c. 140, § 131L (a) and (b). Thus, based on the evidence at trial, the defendant was not entitled to a required finding of not guilty on the charges pertaining to the shotgun.

Conclusion. We hereby vacate the judgments entered against the defendant on December 10, 2015, following the jury trial, and on January 8, 2016,[8] following the bench trial, and remand this case to the Superior Court for further proceedings consistent with this opinion.

So ordered.

---

[8] Because the charges at issue during the bench trial were under G. L. c. 269, § 10G (a), they necessarily depended on the jury's guilty findings as to the various alleged violations of G. L. c. 269, § 10.