NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1252

COMMONWEALTH

vs.

MALIK A. KOVAL.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury-waived trial the defendant, Malik Koval, was convicted of ten counts of a twelve-count indictment:  two counts (one and two) of armed assault with intent to murder, G. L. c. 265, § 18 (b); two counts (three and four) of assault and battery by discharge of a firearm, G. L. c. 265, § 15E; two counts (five and six) of assault and battery on a police officer, G. L. c. 265, § 13D; possession of a firearm without a firearm identification (FID) card, G. L. c. 269, § 10 (h) (count seven); possession of a loaded firearm without a license, G. L. c. 269, § 10 (a) & (n) (count eight); possession of ammunition without an FID card, G. L. c. 269, § 10 (h) (1) (count nine); and disturbing the peace, G. L. c. 272, § 53 (count ten).  On

appeal, the defendant challenges the denial of his motions for required findings of not guilty of counts one through six.[1]  We affirm in part and reverse in part.

Background.  "We recite the facts that the [fact finder] could have found, viewing them in the light most favorable to the Commonwealth, and reserving some details for later discussion."  Commonwealth v. Buttimer, 482 Mass. 754, 756 (2019).  In July 2018, police responded to the defendant's street following reports from a witness that the defendant was throwing and smashing glass bottles in the road.  One of the responding officers, Officer DeMiranda, checked that the defendant was unarmed by asking him to raise his shirt and turn around; seeing no weapons, DeMiranda began questioning him.  DeMiranda noticed that the defendant was agitated and sweating and "was talking a lot," saying that people don't take care of animals and "the police are killing [B]lack people."  When DeMiranda identified himself to the defendant as a Black person, the defendant responded that the officer was helping the police.

Officer Moore arrived and saw DeMiranda questioning the defendant, whom he also perceived was upset and sweating.  While

_____

[1] The defendant did not challenge the conviction of count seven, possession of a firearm without an FID card; rather, he conceded that he possessed a gun, and the parties stipulated at trial that the defendant did not have an FID card or license to carry.  The defendant also did not challenge the conviction of count ten (disturbing the peace).

2

Moore was speaking with the reporting witness, Moore noticed the defendant's body language and composure change in a way that made Moore concerned for the safety of bystanders and DeMiranda. Moore walked over and positioned himself behind the defendant's right shoulder.

When Moore moved into that position, the defendant became more agitated; he looked back at Moore and said, "you can't stand behind me like that." In response, Moore -- concerned that the defendant's behavior would continue to escalate -- stepped toward the defendant and put his hands out to pat frisk him for weapons.

Once Moore moved, the defendant started running away across the lawn. Moore gave chase, but the defendant's mother twice stepped in the way and was pushed by Moore. Eventually, Moore grabbed the defendant as the defendant was tripping him. Seeing the defendant standing over Moore, DeMiranda ran toward them. The defendant ran into the house.

DeMiranda followed the defendant into the house and saw him in the corner of the kitchen manipulating something. Concerned the defendant was grabbing a knife, DeMiranda grabbed the defendant in a "bear hug from behind" to secure him. The defendant started pivoting around, then DeMiranda heard popping sounds and felt a stinging in his chest. DeMiranda turned and

3

ran from the defendant, passing the front door and moving toward a staircase to get out of the defendant's line of sight.

Moore, still outside, heard two loud pops coming from inside the house.  He took a couple of steps into the house and saw DeMiranda running from Moore's right to his left.  Moore heard popping sounds continue as he saw DeMiranda running.  Moore turned to the left and retreated to seek cover outside.  He did not see where DeMiranda went.  As Moore turned to leave, he was grazed by a bullet on the back of his head.

On the stairs, DeMiranda realized he was being shot at and drew his firearm.  He immediately saw the defendant, pistol in his hand pointed at DeMiranda, coming from the kitchen.  DeMiranda started shooting toward the defendant and the front door and hit the defendant, who went out the front door.  DeMiranda did not see anyone standing in or near the door before he fired.

Moore saw the defendant come out of the house, go down the front steps, and take a few steps onto the front lawn before lying down on his stomach at the base of the front steps.

DeMiranda (who was wearing a bulletproof vest) was shot in the chest and in his back left shoulder.  Moore suffered a grazing bullet wound to the back of his head at the hairline.  The defendant suffered multiple gunshot wounds to various parts

4

of his body: left flank, right neck, right shoulder, left wrist, right buttock, and right thigh.

After the shooting, the defendant was transported to the hospital by ambulance accompanied by two detectives. One of the detectives, Detective Loewen, had served as a school resource officer at the high school the defendant attended and was familiar with him. When Loewen asked the defendant what happened, the defendant told the detective he became scared when Moore came to stand behind him, because the police "kill people like [him]," and he was not going to let them. After Loewen responded "[t]hat's not how all cops act," the defendant said "I wouldn't have shot you, Loewen. You are one of the good ones."

The defendant told the detectives that he "got mad when [he] saw [his] mother get tossed to the ground, and that's when [he] did it." Asked for clarification, the defendant said he "ran into the house, grabbed the gun, and [he] shot them."

At the close of the testimony, the defendant moved for required findings of not guilty of counts one through six, maintaining that the Commonwealth failed to present evidence of specific intent to kill, that the defendant was acting in self-defense, and that there was insufficient evidence the defendant shot Moore. The motion was denied. After placing the defendant's medical records in evidence, the defense rested and renewed the motion, which was again denied.

Discussion.  "The standard for evaluating a motion for a required finding of not guilty is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  Commonwealth v. James, 424 Mass. 770, 784 (1997), quoting Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).  "[W]e keep in mind that the evidence relied on to establish a defendant's guilt may be entirely circumstantial, and that the inferences a [fact finder] may draw from the evidence 'need only be reasonable and possible and need not be necessary or inescapable'" (citation omitted).  Commonwealth v. Linton, 456 Mass. 534, 544 (2010), S.C., 483 Mass. 227 (2019).  "To the extent that conflicting inferences may be drawn from the evidence, it is for the [fact finder] to decide which version to credit."  Buttimer, 482 Mass. at 761, quoting Commonwealth v. Webster, 480 Mass. 161, 167 (2018).  "Because the defendant moved for required findings at the close of the Commonwealth's case and again at the close of all the evidence," we also must "determine whether the Commonwealth's position as to proof deteriorated after it closed its case."  Commonwealth v. O'Laughlin, 446 Mass. 188, 198 (2006), quoting Commonwealth v. Sheline, 391 Mass. 279, 283 (1984).

1.  Self-defense (armed assault with intent to murder, assault and battery by means of a firearm, assault and battery

6

on a police officer).  To convict the defendant of armed assault with intent to murder, the Commonwealth must prove "three elements:  assault; intent to kill; and malice, which in this context means an absence of justification, excuse, or mitigation."  Commonwealth v. Moran, 453 Mass. 880, 884 (2009).  See G. L. c. 265, § 18 (b).  The defendant asserts that his shootings of DeMiranda and Moore were justified by self-defense, negating the necessary element of malice and entitling him to required findings of not guilty of counts one and two.[2]

"'[J]ustification' and 'excuse' have been used synonymously in criminal law to indicate the instances where homicide, although intentional, is not unlawful," including lawful self-defense.[3]  Commonwealth v. Nardone, 406 Mass. 123, 130 (1989).

"In a deadly force self-defense case, the Commonwealth may establish the absence of proper use of self-defense by proving

---

[2] This argument also goes to the sufficiency of the evidence for the additional shooting charges in counts three through six. Because the only disputed element for these charges is whether "the [conduct] was unjustified," Commonwealth v. Brule, 98 Mass. App. Ct. 89, 94 (2020), the sufficiency claim is foreclosed by our conclusion below that the Commonwealth proved the defendant's actions were not justified by self-defense.

[3] The defendant does not argue that his actions were excused by mitigation, which includes "heat of passion induced by reasonable provocation, sudden combat, or excessive force in self-defense," Commonwealth v. Johnston, 446 Mass. 555, 558 (2006), and we therefore do not address that issue.

7

beyond a reasonable doubt at least one of the following propositions:"

> "(1) the defendant did not actually believe that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (2) a reasonable person in the defendant's position would not reasonably have believed that he was in immediate danger of death or serious bodily harm from which he could save himself only by using deadly force; (3) the defendant did not use or attempt to use all proper and reasonable means in the circumstances to avoid physical combat before resorting to the use of deadly force; or (4) the defendant used more force than was reasonably necessary in all the circumstances."

Commonwealth v. Grassie, 476 Mass. 202, 210 (2017), S.C., 482 Mass. 1017 (2019).

Here, the Commonwealth's evidence proved at least two of these propositions, permitting "a rational [fact finder] to conclude that the Commonwealth had proved beyond a reasonable doubt that the defendant did not act in the proper exercise of self-defense." Grassie, 476 Mass. at 210-211.

First, the evidence established that the defendant anticipated a confrontation. A neighbor testified that on the day of the incident the defendant "seemed angry" prior to police officers arriving, and -- in the context of talking about the police coming -- said he "would be ready." Compare Commonwealth v. Bertrand, 385 Mass. 356, 362 (1982) (defendant not entitled to self-defense instruction when he made statements to police that he "anticipated a fight"). The defendant's statements

8

after the incident supported the inference that he went into his house intending to get the gun and shoot the officers -- as he did -- rather than to retreat. "Such a mental state is inconsistent with the defendant harboring a subjective fear of serious bodily injury from which he could only save himself by using deadly force." Grassie, 476 Mass. at 211.

Second, "there was no evidence that [the defendant] attempted to avoid further physical combat, nor that he was unable to do so." Commonwealth v. Pike, 428 Mass. 393, 398 (1998). The defendant tripped one of the officers, then retreated to his house to arm himself with a gun, escalating the situation to one involving deadly force. See id. at 397-398 (defendant not entitled to self-defense instruction where, after altercation ended, defendant re-engaged with victim and threw radio at victim's head). See also Commonwealth v. Teixeira, 486 Mass. 617, 623 (2021) ("[a]cting out of a feeling of anger or revenge resulting from the first stage of [an] altercation does not support a contention that a defendant acted out of fear of imminent danger of death or serious bodily harm" [quotation and citation omitted]).

The defendant's fear of police officers does not change this calculus; "[t]he proper standard for determining whether a defendant's particular actions were justifiably undertaken in self-defense depends on the level of force he used on his victim

9

and the circumstances that prompted those actions." Pike, 428 Mass. at 395. "Self-defense using deadly force is not justified" in the absence of a threat "that would cause the defendant serious bodily injury." Id. at 396. Cf. Commonwealth v. Reed, 427 Mass. 100, 103 (1998) (evidence defendant "became 'scared'" insufficient for self-defense instruction). Even though the defendant "reasonably perceived [him]self to be in danger of personal harm" when approached by the officers, "[he] nevertheless was not entitled to respond with a dangerous weapon." Commonwealth v. Vickers, 60 Mass. App. Ct. 24, 29 (2003). See Pike, supra at 396 (for reasonable belief of imminent danger of death "the victim must have committed some overt act against the defendant").

Here, while each officer made physical contact with the defendant -- Moore attempted to grab him and DeMiranda "bear hugged" him -- the officers were "permitted to use force in carrying out [their] official duties if such force [wa]s necessary and reasonable." Commonwealth v. Asher, 471 Mass. 580, 588-589 (2015), quoting Instruction 9.260 of the Criminal Model Jury Instructions for Use in the District Court, at 12 (2009). "The question whether an officer's use of force is reasonable or necessary is one to be decided by the fact finder considering all of the surrounding circumstances." Commonwealth v. Garvey, 99 Mass. App. Ct. 139, 146 (2021). There was no

error in the trial judge's implicit conclusion that neither of these contacts was an act of deadly force justifying deadly force by the defendant.

The defendant contends that DeMiranda's pursuit into the home was unlawful. The Commonwealth disagrees, countering that once the defendant tackled Moore, the defendant could be arrested for assaulting a police officer. We need not resolve the issue because even were we to assume that DeMiranda's entry to the home was not lawful, the defendant was not entitled to shoot him. See Commonwealth v. Gomes, 59 Mass. App. Ct. 332, 339 (2003) (that officer grabbed defendant in his home to effect an arrest was "neither conscience-shocking nor egregious"). "[A]bsent the use of excessive or unnecessary force by police upon his person, an individual may not forcibly resist even an unlawful entry into his residence by one who he knows or has good reason to believe is a police officer engaged in the performance of his duties." Id. at 333. See Commonwealth v. Tyson, 104 Mass. App. Ct. 739, 745 (2024).[4]

Neither officer drew their firearm until after the defendant began shooting. Viewing the facts in the light most

---

[4] The defendant's citation to the "castle rule," see G. L. c. 278, § 8A, is unpersuasive; having retreated into the home to arm himself, the defendant was not then entitled to shoot responding officers who gave no sign of being "about to inflict great bodily injury or death."

11

favorable to the Commonwealth, "[a] rational [fact finder] could thus infer that the defendant had no reasonable basis to believe that he was in imminent danger of suffering death or serious bodily harm from the victim[s] and that he had not 'availed all proper means to avoid physical combat.'"  Commonwealth v. McAfee, 430 Mass. 483, 496 (1999), quoting Commonwealth v. Niemic, 427 Mass. 718, 722 (1998).

2.  Conviction of count one, armed assault with intent to murder Moore.  The defendant claims error in the denial of his motion for a required finding on the indictment for armed assault with intent to murder Moore, asserting that the evidence tended equally to suggest that Moore was shot by DeMiranda.  We are not persuaded.

The evidence showed that (1) Moore was inside the front door when he saw DeMiranda run from the kitchen to the living room, and continued to hear shots as he turned to flee; (2) the defendant quickly followed DeMiranda into the living room; (3) DeMiranda did not see anyone but the defendant inside the house before he fired at the defendant; (4) rounds were ejected from the magazine of the defendant's gun and four casings recovered inside the house were connected to that gun; and (5) Moore was treated for a grazing gunshot wound to the back of his head.

Applying the familiar Latimore standard, this evidence, taken together, adequately supports the conclusion that Moore

12

was not in the doorway when DeMiranda was firing at the defendant and that the defendant shot the bullet that wounded Moore in the back of his head. See Buttimer, 482 Mass. at 764 (evidence taken together "formed a mosaic of evidence" sufficient to prove beyond reasonable doubt that defendant was shooter [citation omitted]). See also Commonwealth v. Arroyo, 442 Mass. 135, 139 n.5 (2004) (shell casings found at scene "tend to prove that the victims were shot" with gun possessed by defendant, even where there was no definitive match between gun and casings). Accordingly, "there was sufficient evidence for the [judge] to find that the defendant committed assault" with the intent to murder Moore. Buttimer, 482 Mass. at 770.

3. Motion at the close of the defendant's case. The proof as to counts one through six did not deteriorate after the presentation of the defendant's case. Although the defendant's medical records reveal that he may have been experiencing mental health issues at the time of this incident, those records do not establish that the Commonwealth's evidence was "incredible or conclusively incorrect" for any of the charges.[5] O'Laughlin, 446 Mass. at 204, quoting Kater v. Commonwealth, 421 Mass. 17, 20

---

[5] We also reject the defendant's claim that the submission of medical records required the Commonwealth to prove he was criminally responsible. This matter was resolved at a pretrial competency hearing at which the defendant's trial attorney agreed that criminal responsibility was not an issue. See Commonwealth v. Wright, 479 Mass. 124, 138 n.17 (2018).

13

(1995).  The fact finder was "free to disbelieve the defendant's account," and the judge "properly denied the defendant's renewed motion for a required finding of not guilty" of counts one through six.  Commonwealth v. Walker, 401 Mass. 338, 343-344 (1987).

4.  Count eight, possession of a loaded firearm without a license.[6]  The Commonwealth was required to "prove that the defendant, (1) possessed, (2) a firearm capable of discharging a shot or bullet, (3) outside his residence or place of business (4) without a license or an FID card."  Commonwealth v. McCollum, 79 Mass. App. Ct. 239, 247 (2011).  Only the third element is at issue:  the parties stipulated that the defendant did not have a license or FID card and the evidence showed the defendant possessed a gun capable of firing.

The defendant's "residence" includes his home and the outside areas "over which [he] retains exclusive control."  Commonwealth v. Coren, 437 Mass. 723, 734 (2002).  "Public streets, sidewalks, and common areas to which occupants of multiple dwellings have access, on the other hand, are not considered part of one's residence."  Id.

---

[6] To the extent that the defendant maintains there was a defect in this indictment, "[f]ailing to object to such a defect prior to trial ordinarily waives any argument pertaining to that defect."  Commonwealth v. Lamont L., 438 Mass. 842, 845 (2003).  See G. L. c. 277, § 47A.  In any event, given our conclusion, we need not reach this issue.

14

The defendant lived in a single-family home with his mother and stepfather. The trial evidence showed he did not travel farther than a few steps from his front door with the gun, remaining on the front lawn of the home. Compare Commonwealth v. Horne, 466 Mass. 440, 452 (2013) (defendant "confronted [victim] in the middle of the street near the defendant's home"); Commonwealth v. Seay, 376 Mass. 735, 743 (1978) (G. L. c. 269, § 10 [a], "prohibits the unlicensed carrying of a firearm in a foyer or other common area of an apartment building by one who merely happens to rent an apartment therein"). The evidence "was insufficient to sustain the Commonwealth's burden of proving beyond a reasonable doubt that the gun was possessed outside of the residence." Coren, 437 Mass. at 735. It was error to deny the defendant's motion for a required finding on this count.

5. Count nine, unlicensed possession of ammunition. "To convict for unlicensed possession of ammunition, the Commonwealth must show that the defendant (1) possessed, (2) ammunition designed for use in any firearm, and (3) without complying with the FID card requirements as provided by the applicable statute. G. L. c. 269, § 10 (h)." McCollum, 79 Mass. App. Ct. at 245. Since the ammunition was recovered from one of the upstairs bedrooms in the defendant's house, the Commonwealth must show constructive possession, which "requires

15

only proof of knowledge coupled with the ability and intention to exercise dominion and control" (quotations and citation omitted).  Commonwealth v. Tiscione, 482 Mass. 485, 494 (2019). "This proof 'may be established by circumstantial evidence, and the inferences that can be drawn therefrom.'"  Id., quoting Commonwealth v. Dagraca-Teixeira, 471 Mass. 1002, 1004 (2015). "[A] sufficiency of the evidence evaluation for constructive possession is necessarily fact-specific, and turns on the totality of the evidence."  Commonwealth v. Santana, 95 Mass. App. Ct. 265, 268 (2019), citing Commonwealth v. Albano, 373 Mass. 132, 134 (1977).

The evidence here was inadequate.  Testimony established that the defendant was one of at least three occupants of the house where the ammunition was found, the defendant used a gun, and the gun was loaded when it was recovered by Officer DeMiranda.  There was no evidence that tied the ammunition found in an upstairs bedroom to the defendant or to the firearm. There was no evidence about the room in which the ammunition was found -- no testimony, for example, regarding the clothes in the closet or dressers, or that any documents were found in the room bearing the defendant's name -- nor any ballistics or police testimony that the ammunition was of a type or size consistent with the firearm the defendant used.  The Commonwealth suggests that no other firearms were recovered from the home.  This is

16

not enough.  See Santana, 95 Mass. App. Ct. at 269-270.  See also Commonwealth v. Frongillo, 66 Mass. App. Ct. 677, 678-681 (2006) (evidence from which jury reasonably could infer that defendant resided in apartment, or at least spent great deal of time there, combined with men's clothing in closet where firearms were found and evidence that husband of defendant's fiancé had moved out, sufficient to permit reasonable inference that defendant had knowledge of firearms and ammunition found in closet and ability to control them, but inadequate to show intention to do so); Commonwealth v. Brown, 50 Mass. App. Ct. 253, 257 (2000) (probability that one of three defendants fired handgun insufficient to implicate any specific defendant or convict others of joint and constructive possession).

Conclusion.  The judgments of conviction of counts eight and nine, possession of a loaded firearm without a license and of ammunition without an FID card, are reversed, the findings on

17

those counts are set aside, and judgments shall enter for the defendant.  The remaining judgments are affirmed.

<u>So ordered</u>.

By the Court (Englander,
  Hershfang & Brennan, JJ.[7]),

_Paul Little_

Clerk

Entered: March 11, 2025.

---

[7] The panelists are listed in order of seniority.

18