NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-954

COMMONWEALTH

vs.

DIONY RAMIREZ.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant, Diony Ramirez, appeals from judgments, entered after a jury trial in Superior Court, of conviction on indictments for aggravated rape of a child and indecent assault and battery of a child under the age of fourteen. The defendant argues, first, that a detective's testimony concerning the defendant's postarrest silence violated the protections set forth in Doyle v. Ohio, 426 U.S. 610, 611, 616-619 (1976), and constituted error that was not harmless beyond a reasonable doubt. The defendant also argues that evidence relating to statements that she made during a postarrest telephone call in the police station was improperly admitted. Because we agree that the detective's testimony on the defendant's postarrest

silence constituted error that was not harmless beyond a reasonable doubt, we vacate the defendant's convictions and remand the case for a new trial should the Commonwealth choose to pursue one.

1.  Background.  We summarize the facts as the jury could have found them, unless otherwise noted.  We reserve certain details for later discussion.

a.  Alleged incidents and disclosure.  The child, Travis,[1] lived with his mother, stepfather, grandmother, and younger sister.  In October of 2019, the defendant -- a cousin -- moved into the attic of Travis's house for several weeks.

The alleged rape and indecent assault and battery occurred at the home during one night during that period, when the defendant babysat Travis (who was then eleven or twelve years old) and his sister.

In August of 2020, months after the alleged incidents, Travis's mother took Travis to a tattoo shop, where they both intended to get an eyebrow piercing.  As part of the intake, Travis was presented with a form asking whether he had a sexually-transmitted infection (STI).  After reading this question, Travis told his mom that he no longer wanted to get the piercing.  Travis's mother, realizing "something was off," prompted Travis to talk to her in private, whereupon Travis told

_____

[1] A pseudonym.

2

his mother that he and the defendant "had sex" months earlier and he thought he had an STI.  Travis's mother called the police to report the incidents, and later, they filed a report with the police.  Travis and his mother also went to the hospital to get Travis tested for an STI.  He tested negative.

b. <u>Defendant's postarrest telephone call</u>.  The following facts, which closely mirror those at trial, could have been found from the on hearing the defendant's motion for sanctions. On August 11, 2020, the defendant turned herself in to the Revere police station and was placed into custody.  Revere Police Detective Sasha Arana served as an English language interpreter between the defendant and Sergeant Stacey Bruzzese. Per the booking process, Arana read the defendant her Miranda rights in Spanish and then asked the defendant if she understood said rights, to which the defendant stated that she did.  Arana then asked the defendant whether she wanted to speak to the police, to which the defendant said no.  Arana handed the defendant a form listing the Miranda rights in English, and explained to the defendant that rights listed therein were the same rights Arana had just verbally enumerated, and which the defendant had acknowledged that she understood.  The defendant then signed the form, indicating that she understood her Miranda rights, and that she did not want to speak to the police.  Arana informed the defendant that she was permitted to make a

3

telephone call using the booking room's telephone. Located above the telephone, a sign read, in English, that the telephone line was recorded. The defendant placed a telephone call, and Arana, who was standing about three feet away, overheard the defendant's conversation, and reported it to Bruzzese. Bruzzese memorialized what Arana had heard from the defendant in a "supplemental narrative report," which read,

> "While [the defendant] was on the phone she explained to the person on the other end where she was and her charges. She told the individual that she didn't do anything to the victim but that 'you know how I get when I take those blue pills.' 'I can't remember anything I do.'"

On January 4, 2021, the defendant was indicted for aggravated rape of a child, in violation of G. L. c. 265, § 23A, and indecent assault and battery on a child under the age of fourteen, in violation of G. L. c. 265, § 13B. On January 26, 2021, the Commonwealth presented defendant's counsel with discovery, including Bruzzese's supplemental narrative report. In July of 2021, the Commonwealth notified the defendant's counsel that, although the defendant's postarrest telephone call had been recorded, the recording had been destroyed. The defendant filed a motion for sanctions for the Commonwealth's failure to preserve the recording, requesting exclusion of the evidence of the defendant's statements made during the telephone

4

call.[2]  After a hearing, the motion judge denied the defendant's motion for sanctions, stating that the defendant would "be given the opportunity to thoroughly cross-examine" Arana and Bruzzese on the contents of the telephone call, and that an instruction would be provided, if requested.  The defendant filed a second motion to exclude this evidence just before trial, and the trial judge denied the motion.

c.  Trial.  At trial, Arana testified that the defendant "mentioned something about, you know how I get when I take these pills. . . . I don't remember."  On cross-examination, defendant's counsel asked Arana if the defendant had also stated during the telephone call that "she didn't touch [Travis]," to which Arana responded that she could not recall.  After having her recollection refreshed by Bruzzese's written narrative, Arana confirmed that the defendant "told the person on the other end" of the telephone call that "she didn't do anything to [Travis]."  Additionally, in the final jury charge, the judge instructed the jury that, based on the Commonwealth's failure to preserve the recording of the defendant's telephone call, the

---

[2] The defendant also filed a motion to suppress the defendant's alleged statement made during the telephone call "on constitutional grounds."  The motion judge, who also denied the motion for sanctions, denied this motion, and the defendant does not challenge the judge's denial on appeal.

5

jury "may, but need not, infer that the recording would have been unfavorable to the Commonwealth."

The jury deliberated for three days before finding the defendant guilty on both counts.[3]

2. Discussion. a. Direct examination of Arana. The defendant asserts that her right to remain silent was violated when the prosecutor elicited from Arana statements that indicated the defendant's choice not to speak to the police after being Mirandized. On direct examination, Arana testified that the defendant, upon being put into custody, was read her Miranda rights, after which the following exchange and objections occurred:

> THE PROSECUTOR: "Okay. . . . And did [the defendant] say if she wanted to speak to the police?"
>
> DETECTIVE ARANA: "She did not."
>
> DEFENSE COUNSEL: "Objection."
>
> THE JUDGE: "Overruled. . . . We have the answer to the question. Next question."
>
> THE PROSECUTOR: "Okay. So what did you do at that point?"
>
> DETECTIVE ARANA: "After she did not want to speak to police, she was allowed to make a phone call."

---

[3] On the second day of deliberations, the jury reported that they "don't seem to be able to reach consensus" and, later that afternoon, that they were not making any progress. The judge responded to the second note by giving the jury a "Tuey-Rodriguez" instruction. See Commonwealth v. Rodriguez, 364 Mass. 87, 101-102 (1973); Commonwealth v. Tuey, 8 Cush. 1, 8 (1851).

THE JUDGE: "I'm sorry, the objection is sustained and the answer will be stricken."

"There is no question that, under the fundamental principles of jurisprudence, evidence of a criminal defendant's postarrest, post-Miranda silence cannot be used for the substantive purpose of permitting an inference of guilt. . ." Commonwealth v. Mahdi, 388 Mass. 679, 694 (1983). Furthermore, "[t]estimony regarding a defendant's statements indicating his or her intention to remain silent are 'equally unacceptable.'" Commonwealth v. Beneche, 458 Mass. 61, 73 (2010), quoting Mahdi, supra at 694-695. "This is true regardless of whether the judge struck the improper reference, as was done here." Commonwealth v. Chase, 70 Mass. App. Ct. 826, 833 (2007). Here, Arana's testimony that the defendant declined to speak to the officers following being read her Miranda rights clearly violates these principles.

The Commonwealth does not contest that Arana's reference to the defendant's post-Miranda silence was admitted in error. Rather, it contends that this error was not harmless beyond a reasonable doubt. See Commonwealth v. Tiscione, 482 Mass. 485, 493 (2019) ("A constitutional error preserved by a timely objection . . . is reviewed to determine whether it was harmless beyond a reasonable doubt"). We are not persuaded.

7

In considering whether a Doyle error is harmless beyond a reasonable doubt, we consider the following factors:  "(1) the relationship between the evidence and the premise of the defense; (2) who introduced the issue at trial; (3) the weight or quantum of evidence of guilt; (4) the frequency of the reference; and (5) the availability or effect of curative instructions" (footnotes omitted).  Mahdi, 388 Mass. at 696-697.  "These factors are not exclusive or exhaustive," id. at 697, nor are they necessarily to be accorded equal weight.  See id. at 698.  Also, notably, the Supreme Judicial Court in Mahdi noted that "[t]he nature of a Doyle error is so egregious that reversal is the norm, not the exception."  Id.

First, the defendant's decision not to speak to the police inherently undercut the defense's premise, i.e., that Travis and his mother fabricated their account of the events.  By indicating to the jury that the defendant remained silent, Arana's testimony invited an inference that undermined the defense and improperly bolstered Travis's credibility as to his account of the events.

The second and third factors also weigh in favor of the defendant, as (1) it was the prosecutor who elicited Arana's testimony, and (2) the evidence against the defendant was not overwhelming, as conceded by the Commonwealth.  Contrast Chase, 70 Mass. App. Ct. at 835 (reference to defendant's post-Miranda

8

silence harmless beyond reasonable doubt where quantum of evidence of guilt was strongly in Commonwealth's favor).  For example, while not "required to support a conviction of rape or sexual assault where the victim testified as a witness at the trial," Commonwealth v. Santos, 100 Mass. App. Ct. 1, 3 (2021), the Commonwealth did not present forensic evidence or independent corroboration of the alleged crimes.[4]  Further, the jury deliberated for three days, during which they twice indicated that they were not "making progress."  They came to a decision after being given a Tuey-Rodriguez instruction.

The fourth factor favors the Commonwealth, albeit slightly, as only Arana's second answer clearly implicated the defendant's post-Miranda silence.  Although, at first, the judge overruled defense counsel's objection to Arana's first answer, interpreting her testimony to be indicating that the defendant remained silent when asked by Arana if she wanted to talk to the police -- and not that the defendant had affirmatively declined to speak to the police -- the judge ultimately struck both of

---

[4] Additionally, the defense identified inconsistencies between Travis's testimony at trial and his initial interview with police regarding his clothing, the location of the alleged incidents within the home, and how the alleged rape had occurred and concluded.

9

Arana's answers.[5]  Additionally, the prosecutor did not reference the defendant's silence in his opening or closing statements.

Lastly, although the judge instructed the jury to disregard any statements struck throughout the course of the trial, this instruction cannot be said to have completely alleviated the impact of Arana's reference, especially here, where the record does not readily indicate which of Arana's answers the judge intended to strike, and the instruction was given during the final jury charge, a day after the testimony, and not immediately after Arana's reference to the defendant's post-Miranda silence.

In sum, we cannot conclude that admission of Arana's testimony was harmless beyond a reasonable doubt, where the reference both undermined the defense's central premise and was elicited by the prosecutor, and the evidence was not overwhelming in the Commonwealth's favor.  We, therefore, vacate the defendant's convictions.

b.  Admission of evidence related to defendant's postarrest telephone call.  The defendant also asserts that the motion

---

[5] After Arana's second answer, where she clearly referenced the defendant's post-Miranda silence, the parties went to sidebar where defense counsel moved for a mistrial.  After the sidebar conference, the judge instructed the jury that "the last answer given by the police officer" was struck.  Because Arana's second answer was "the last answer given" before the sidebar conference, we interpret the judge to have struck Arana's second answer.

10

judge and the trial judge erred in denying her motions to exclude the evidence of the defendant's postarrest telephone call. We review the judges' rulings for abuse of discretion or other error of law. See Commonwealth v. Carney, 458 Mass. 418, 425 (2010).

When faced with allegations of lost or destroyed exculpatory evidence, a judge must first consider whether a defendant satisfied "the initial burden of demonstrating the exculpatory nature of that evidence."[6] Commonwealth v. Williams, 455 Mass. 706, 718 (2010). To do so, the defendant must "establish[] a reasonable possibility, based on concrete evidence rather than a fertile imagination" that the lost evidence would be favorable to his case (quotation and citation omitted). Commonwealth v. Neal, 392 Mass. 1, 12 (1984). If a defendant meets their initial burden, the judge then balances "the Commonwealth's culpability, the materiality of the lost evidence, and the prejudice to the defendant." Williams, supra at 718.

Here, the defendant points to Bruzzese's supplemental narrative as the "concrete evidence" of the recording's exculpatory nature. Specifically, the defendant argues that the

---

[6] Notwithstanding whether the defendant seeks remedy for the Commonwealth's loss or destruction of exculpatory evidence in the form of suppression, dismissal, or, as here, sanctions, the burden on the defendant remains substantially the same. See Commonwealth v. Sanford, 460 Mass. 441, 446-447 (2011).

11

portion of the narrative where she is alleged to have said that she "didn't do anything to the victim" leads to the inference that the entirety of the telephone call would have been favorable to her case.  The defendant did not, however, identify how the entire recording of the telephone call differed from the portions of the narrative that were introduced through Arana's testimony, and further, how any undisclosed portions would have been otherwise exculpatory.  See Commonwealth v. Seino, 479 Mass. 463, 477 (2018) (initial burden not met where defendant [1] failed to demonstrate how officer's notes, written in preparation of police report and destroyed before trial, differed from report itself, and [2] defendant had opportunity to cross-examine officer).  See also Commonwealth v. Kater, 432 Mass. 404, 420-421 (2000).  Moreover, the premise that the recording would have revealed the context surrounding the defendant's statements (as well as her tone and demeanor while uttering them) does not necessarily lead to the conclusion that such would have been favorable to the defendant's case, as posited by the defendant.  See Williams, 455 Mass. at 717 (defendant must show, beyond "speculation or surmise," that lost evidence was exculpatory).

In any event, even had the defendant met her initial burden, she was not prejudiced at trial by the unavailability of the recording, where defense counsel was permitted to, and in

fact did, cross-examine Arana on the contents of the telephone call eliciting evidence that the defendant said she did not assault Travis, and the jury was instructed that they may infer that the telephone call would have been unfavorable to the Commonwealth.  Contrast Commonwealth v. Heath, 89 Mass. App. Ct. 328, 338-339 (2016) (defendant was prejudiced where judge declined to give missing evidence instruction).  Thus, despite the Commonwealth's culpability in failing to preserve the recording, and the materiality of its contents, we discern no prejudice as a result of the recording's destruction.

We also conclude that the defendant did not establish that the Commonwealth destroyed the recording "'in bad faith or recklessly,'" and thus, cannot "take advantage of the analysis more favorable to the defendant for such cases, which would require the Commonwealth to show that 'the lost or destroyed evidence was not potentially exculpatory.'"  Seino, 479 Mass. at 477 n.21, quoting Commonwealth v. Sanford, 460 Mass. 441, 450 (2011).

Although Arana testified at the hearing on the motion for sanctions to knowing that "all the phones in the station are recorded," she also testified that she did not know how long the recordings were preserved.  Likewise, at that same hearing, Bruzzese testified that she did not know whether the recording system was working, and, at trial, she testified that she had

13

not noticed the sign indicating that the defendant's call would be recorded. Put together, the judges acted within their discretion in concluding that such evidence was insufficient to establish that the police acted recklessly or in bad faith in failing to preserve the recording. See Seino, 479 Mass. at 477 n.21; Commonwealth v. Gonsalves, 99 Mass. App. Ct. 638, 642-643 & 643 n.3 (2021) (judge acted within discretion in finding victim's testimony that officer had told her to delete texts from defendant did not establish that police acted recklessly or in bad faith).

Lastly, the defendant argues that the probative value of the portions of the telephone call overheard by Arana was substantially outweighed by the risk that the statements, introduced without the context of the recording, would mislead the jury.[7] See Commonwealth v. Rosa, 422 Mass. 18, 25 (1996) (when determining whether evidence is admissible, judge must consider, inter alia, risk of "prejudice, including confusion of the jury"); Mass. G. Evid. § 403 (2021). As discussed above, where Arana was subject to cross-examination regarding her

_____

[7] The defendant moved to exclude the evidence on these grounds in a pretrial motion, and thus, we review its admission for an abuse of discretion. See Commonwealth v. Fan, 490 Mass. 433, 444 (2022) ("A determination whether the risk of prejudice substantially outweighs the probative value of the evidence is for the trial judge, who is in the best position to evaluate the effect of the evidence and therefore enjoys broad discretion in the matter").

14

recollection of the defendant's statements, and the jury was instructed that it was able to infer that the recording would have been unfavorable to the Commonwealth, we discern no abuse of discretion in admitting the statements, as they were relevant to whether the defendant had committed the alleged conduct. See Commonwealth v. Bryant, 482 Mass. 731, 735 (2019) ("The effectiveness of limiting instructions in minimizing the risk of unfair prejudice should be considered in balancing prejudice and probative value"). Contrast Heath, 89 Mass. App. Ct. at 339 ("In the absence of any instruction from the judge about how to consider the missing evidence, the potential for juror confusion was substantial").

c. Sufficiency of the evidence. Finally, we note that the Commonwealth's ability to, on remand, reprosecute the defendant depends on whether the evidence at trial was sufficient to convict her of the offenses. See Commonwealth v. Lester, 70 Mass. App. Ct. 55, 66 (2007). Considering the evidence introduced -- chiefly, Travis's testimony -- in a light most favorable to the Commonwealth, we conclude that "a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Oberle, 476 Mass. 539, 547 (2017). See Commonwealth v. Rarick, 87 Mass. App. Ct. 349, 353 (2015) (weight of evidence is not determination of sufficiency of evidence).

15

Accordingly, we vacate the judgments, set aside the verdicts, and remand the case for a new trial should the Commonwealth elect to pursue one.[8]

<u>So ordered</u>.

By the Court (Rubin, Desmond & Allen, JJ.[9]),

Clerk

Entered:  June 3, 2026.

---

[8] Because we vacate the judgments on the grounds discussed above, we do not reach the other issues raised by the defendant on appeal.

[9] The panelists are listed in order of seniority.

16